ACCEPTED
04-14-00829-cv
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
12/24/2014 9:16:08 AM
KEITH HOTTLE
CLERK

**ORAL ARGUMENT REQUESTED**

No. 04-14-00829-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
12/24/2014 9:16:08 AM
KEITH E. HOTTLE
Clerk

IN THE COURT OF APPEALS
FOR THE FOURTH JUDICIAL DISTRICT OF TEXAS
AT SAN ANTONIO

Western Rim Property Services, Inc.,

*Appellant,*

RECEIVED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
12/29/2014 1:40:00 PM
KEITH E. HOTTLE
Clerk

v.

Paula Bazan-Garcia,

*Appellee.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. CC# 03 OF
BEXAR COUNTY, TEXAS, CAUSE NO. 2014CV01064

**APPELLANT'S OPENING BRIEF**

**BAKER BOTTS L.L.P.**
Jennifer M. Trulock
State Bar No. 90001515
jennifer.trulock@bakerbotts.com
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980
(214) 953-6500
(214) 953-6503 (Facsimile)

**BAKER BOTTS L.L.P.**
Stephanie F. Cagniart
State Bar No. 24079786
stephanie.cagniart@bakerbotts.com
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701-4078
(512) 322-2500
(512) 322-2501 (Facsimile)

Attorneys for Appellant Western Rim Property Services, Inc.

# Identity of Parties and Counsel

| | |
|---|---|
| Appellant | Western Rim Property Services |
| Counsel for Appellant | BAKER BOTTS L.L.P.<br>Jennifer M. Trulock<br>State Bar No. 90001515<br>2001 Ross Avenue<br>Suite 600<br>Dallas, Texas 75201<br><br>Stephanie F. Cagniart<br>State Bar No. 24079786<br>98 San Jacinto Blvd<br>Suite 1500<br>Austin, Texas 78701 |
| Appellee | Paula Bazan-Garcia |
| Counsel for Appellee | The Espinoza Law Firm, PLLC<br>Javier Espinoza<br>State Bar No. 24036534<br>Josue Garza<br>State Bar No. 24072737<br>503 E. Ramsay<br>Suite 103<br>San Antonio, Texas 78216 |

# Table of Contents

**Page**

Identity of Parties and Counsel ................................................................. i

Table of Authorities .......................................................................... iv

Statement of the Case.......................................................................... vii

Issue Presented ................................................................................ viii

Statement of Facts...............................................................................1

    I.      Bazan-Garcia agreed to arbitrate her disputes with WRPS. .................1

    II.    Despite the parties' agreement to arbitrate their disputes, Bazan-Garcia files a lawsuit against WRPS in state court....................3

Standard of Review ..............................................................................4

Summary of the Argument.........................................................................6

Argument.........................................................................................7

    I.      The trial court erred in refusing to compel arbitration because Bazan-Garcia agreed to arbitrate her disputes with WRPS. .................7

        A.    WRPS proved that Bazan-Garcia agreed to arbitrate her disputes with WRPS. ...............................................8

        B.    WRPS proved that Bazan-Garcia's claims fall within the scope of her agreement to arbitrate.........................................10

    II.    The trial court abused its discretion by denying WRPS's motion to compel arbitration on the grounds that the parties' agreement was unconscionable, because that defense is itself subject to arbitration. ...............................................................12

        A.    The parties' arbitration agreement clearly and unmistakably delegated issues of arbitrability to the arbitrator...................................................13

B. Bazan-Garcia is bound to arbitrate her unconscionability defense because she failed to prove that the delegation clause was invalid. ....................................................17

III. In the alternative, the trial court erred in denying WRPS's motion to compel arbitration because Bazan-Garcia did not prove that the parties' arbitration agreement is unconscionable.........20

A. Legal Standard ........................................................20

B. Bazan-Garcia failed to prove that arbitration under the parties' agreement would be more expensive than litigation, and effectively prevent her from vindicating her statutory rights. .............................................22

1. Bazan-Garcia failed to prove that arbitrating her claims is likely to cost upwards of $20,000. ..................23

2. Under the parties' agreement, WRPS will bear almost all of the costs of arbitration. ..............................26

C. An arbitration agreement cannot be found unconscionable based on provisions that the arbitrator is empowered to modify. ............................................28

IV. If any provision of the arbitration agreement is unconscionable, this Court should sever it and enforce the remainder of the agreement. ..................................................32

Conclusion and Prayer for Relief..........................................33

Certificate of Compliance ...................................................35

Certificate of Service ........................................................35

Index to Appendix...........................................................36

# Table of Authorities

**Page(s)**

**C**ASES

*Aspen Tech., Inc. v. Shasha,*
253 S.W.3d 857 (Tex. App.—Houston [14th Dist.] 2008, no pet.) .............23, 24

*Burlington Res. Oil & Gas Co. LP v. San Juan Basin Royalty Trust,*
249 S.W.3d 34 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) .................16

*Cantella & Co., Inc. v. Goodwin,*
924 S.W.2d 943 (Tex. 1996) .......................................................................5, 10

*Contec Corp. v. Remote Solution, Co., Ltd.,*
398 F.3d 205 (2d Cir. 2005) ..............................................................................15

*D.R. Horton-Tex., Ltd. v. Dragseth,*
02-12-000435, 2013 WL 3377121 (Tex. App.—Fort Worth July 3, 2013,
no pet.) ...............................................................................................................5

*Ernst & Young LLP v. Martin,*
278 S.W.3d 497 (Tex. App.—Houston [14th Dist.] 2009, no pet.) .............13, 17

*Forest Oil Corp. v. McAllen,*
268 S.W.3d 51 (Tex. 2008)............................................................6, 8, 12, 13, 20

*Garcia v. Huerta,*
340 S.W.3d 864 (Tex. App.—San Antonio 2011, pet. denied)............................5

*Gilmer v. Interstate/Johnson Lane Corp.,*
500 U.S. 20 (1991).............................................................................................28

*Green Tree Fin. Corp.-Ala. v. Randolph,*
531 U.S. 79 (2000)................................................................................22, 23, 24

*Haddock v. Quinn,*
287 S.W.3d 158 (Tex. App.—Fort Worth 2009, pet. denied)............................16

*Hoover Slovacek LLP v. Walton,*
206 S.W.3d 557 (Tex. 2006) .............................................................................20

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .................................................................................13

*IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*,
387 S.W.3d 799 (Tex. App.—El Paso 2012, no pet.) .......................................19

*In re Dallas Peterbilt, L.L.P.*,
196 S.W.3d 161 (Tex. 2006) ................................................................10

*In re FirstMerit Bank, N.A.*,
52 S.W.3d 749 (Tex. 2001)..........................................................8, 23, 29, 31

*In re Halliburton Co.*,
80 S.W.3d 566 (Tex. 2002)...............................................................8, 10

*In re J.D. Edwards World Solutions Co.*,
87 S.W.3d 546 (Tex. 2002)...................................................................5, 8

*In re Olshan Found. Repair Co., LLC*,
328 S.W.3d 883 (Tex. 2010) .................................... 6, 20, 21, 22, 23, 25, 27, 28

*In re Palm Harbor Homes, Inc.*,
195 S.W.3d 672 (Tex. 2006) ...................................................................9

*In re Poly-America, L.P.*,
262 S.W.3d 337 (Tex. 2008) ........................ 5, 20, 21, 22, 28, 29, 30, 31, 32, 33

*In re Rubiola*,
334 S.W.3d 220 (Tex. 2011) ................................................................10

*In re Weekley Homes, L.P.*,
180 S.W.3d 127 (Tex. 2005) ................................................................13

*J.M. Davidson, Inc. v. Webster*,
128 S.W.3d 223 (Tex. 2003) ...................................................................4

*Jack B. Anglin Co., Inc. v. Tipps*,
842 S.W.2d 266 (Tex. 1992) ...............................................................8, 27

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)...........................................................................21

*Palm Harbor Homes, Inc. v. McCoy*,
944 S.W.2d 716 (Tex. App.—Fort Worth 1997, no writ) .....................................5

*Petrofac, Inc. v. Dyn McDermott Petroleum Operations Co.*,
687 F.3d 671 (5th Cir. 2012) ...................................................................15

*Prudential Sec. Inc. v. Marshall*,
909 S.W.2d 896 (Tex. 1995) ...................................................................10

*Rent-A-Center, West v. Jackson*,
561 U.S. 63 (2010)...................................................13, 17, 18, 19, 20

*Saxa Inc. v. DFD Architecture Inc.*,
312 S.W.3d 224 (Tex. App.—Dallas 2010, pet. denied)..............................14, 15

*Ski River Dev., Inc. v. McCalla*,
167 S.W.3d 121 (Tex. App.—Waco 2005, pet. denied) .....................................31

*Venture Cotton Co-op v. Freeman*,
435 S.W.3d 222 (Tex. 2014) .....................................21, 22, 32, 33

**STATUTES**

9 U.S.C. § 2 ............................................................................13

Tex. Civ. Prac. & Rem. Code § 171.001 ....................................................8

Tex. Civ. Prac. & Rem. Code § 171.001(b)..............................................5, 13

Tex. Civ. Prac. & Rem. Code § 171.002(a)(4) ...........................................16

Tex. Civ. Prac. & Rem. Code § 171.021(c)................................................5, 12

Tex. Civ. Prac. & Rem. Code § 171.025(a)..............................................8

**OTHER AUTHORITIES**

AAA Employment Rules ..............................................................*passim*

Restatement (Second) of Contracts § 208 (1981)..................................32

Tex. R. App. P. 9.4...................................................................35

**Statement of the case**

This is an accelerated interlocutory appeal from denial of a motion to compel arbitration. Plaintiff-Appellee Paula Bazan-Garcia ("Bazan-Garcia"), who worked as an at-will employee for Defendant-Appellant Western Rim Property Services ("WRPS"), agreed in and after her initial employment agreement that any dispute between her and WRPS would be resolved by binding arbitration. Bazan-Garcia also agreed that any dispute over the validity and enforceability of the parties' arbitration agreement would be decided by the arbitrator, not by the court. Despite these promises, Bazan-Garcia sued WRPS on various claims arising from her employment and termination, *see* CR 9–13, all of which fall within the scope of the parties' arbitration agreement, *see* App. 3–13.[1]

After Bazan-Garcia refused to submit her claims to arbitration in accordance with the agreement, WRPS moved to compel arbitration in the trial court. CR 16–70. The trial court denied WRPS's motion on November 17, 2014. App. 1. WRPS timely filed its notice of accelerated interlocutory appeal on November 24, 2014. CR 156–57. On December 3, 2014, this Court granted WRPS's Emergency Motion to Stay Proceedings in the trial court pending resolution of this appeal.

---

[1] The Clerk's Record is referred to herein as "CR," the Supplemental Clerk's Record as "Supp. CR," the Reporter's Record as "RR," and the Appendix as "App."

## Issue Presented

Did the trial court err by denying WRPS's motion to compel arbitration, where it was undisputed that Bazan-Garcia agreed to arbitrate her disputes with WRPS, where Bazan-Garcia's only challenge to the arbitration agreement was based on an unconscionability defense that the parties also agreed would be decided by the arbitrator rather than the court, and where Bazan-Garcia failed to prove that she would not be able to vindicate her statutory rights in the forum of arbitration?

**I.    Bazan-Garcia agreed to arbitrate her disputes with WRPS.**

Paula Bazan-Garcia was employed as a housekeeper by WRPS from September 26, 2011 until October 22, 2013.  CR 32.  Both upon hire and during her employment with WRPS, Bazan-Garcia signed and assented to several written agreements.  *See* CR 32–33.  Among these agreements were an Employee Acknowledgement Form ("Acknowledgement") and an Arbitration Agreement ("Arbitration Agreement"), both of which contained mandatory and binding arbitration provisions.  App. 3, 4.

The Acknowledgement stated that Bazan-Garcia had received a copy of WRPS's Employee Handbook, and that she understood that "it [was her] responsibility to read and comply with the policies contained in this handbook and any revisions made to it."  App. 4.  The Employee Handbook included a section entitled "Problem Resolution."  App. 12.  It had an arbitration provision stating:

> Problems, disputes, or claims not resolved through [voluntary internal dispute] resolution steps are subject to final and binding arbitration.  The arbitration proceeding will be conducted under the Employment Dispute Resolution Rules of the American Arbitration Association [(the "AAA Rules")].

App. 13.  This same provision was included in every version of the Employee Handbook in place during Bazan-Garcia's employment.  *See* CR 33, 53, 63, 70.  Bazan-Garcia signed the Acknowledgement on September 20, 2011.  App. 4.

1

Bazan-Garcia signed the Arbitration Agreement on September 27, 2011. App. 3. The agreement was clearly entitled "Arbitration Agreement," and also stated that disputes between Bazan-Garcia and WRPS would be decided by binding arbitration under the AAA Rules:

> [O]ther than a worker's compensation claim covered by insurance, no dispute between [WRPS] and the undersigned which is in any way related to the employment of the undersigned, including but not limited to a claim for wrongful termination, discrimination and/or harassment, and worker's compensation not covered by insurance, shall be the subject of a lawsuit filed in any state or federal court. Instead, any such dispute shall be submitted to arbitration in accordance with the rules of the American Arbitration Association ("AAA").

*Id*. Under the AAA Rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule 6(a) (App. 30).[2] The Arbitration Agreement also specified that "[e]ach party to arbitration shall be entitled to take only one deposition," and that "[a]ny arbitration relating to any dispute covered by this Agreement shall be arbitrated in Dallas County, Texas." App. 3.

---

[2]    AAA Employment Rules are available online at https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004362.

On October 22, 2013, WRPS terminated Bazan-Garcia's employment. CR 32. Because Bazan-Garcia's employment was "at-will," WRPS could terminate it "at any time without a cause or reason." CR 35.

**II. Despite the parties' agreement to arbitrate their disputes, Bazan-Garcia files a lawsuit against WRPS in state court.**

More than eight months after her termination, on July 1, 2014, Bazan-Garcia initiated this lawsuit in Bexar County Court at Law. CR 9. In her Original Petition, Bazan-Garcia alleged that WRPS's stated reasons for terminating her employment were pretextual. CR 11. The real reason for her discharge, she claimed, was that she had sustained and notified WRPS of an "on-the-job injury and/or initiated the filing of a workers' compensation claim." CR 11. WRPS answered with a general denial on September 12, 2014. CR 14–15. Bazan-Garcia then served her initial discovery requests on WRPS, including 72 requests for production, 23 interrogatories, and 13 requests for admission. Supp. CR 10–35.

Shortly after receiving Bazan-Garcia's discovery requests, WRPS sent a copy of Bazan-Garcia's signed arbitration agreement to Bazan-Garcia's counsel and demanded that Bazan-Garcia submit her claims to arbitration in accordance with her agreement. CR 30. Bazan-Garcia refused, and WRPS filed a Motion to Compel Arbitration on October 16, 2014. CR 16. WRPS also filed a Motion for Protective Order from Discovery, asking the trial court for relief from the obligation to respond to Bazan-Garcia's burdensome discovery requests until the

3

court decided whether arbitration was required. Supp. CR 4–8. In her response brief and supporting affidavits, Bazan-Garcia did not dispute that she had agreed to arbitrate her disputes with WRPS. Instead, she claimed that the arbitration agreement was unconscionable and therefore unenforceable. CR 72–97.

The trial court held a hearing on WRPS's motion to compel arbitration and motion for a protective order, found the arbitration agreement was unconscionable, *see* RR 18, and denied WRPS's motions on November 17, 2014 on that ground, *see* App. 1. On November 19, 2014, Bazan-Garcia filed her First Amended Petition, alleging for the first time that WRPS interfered with Bazan-Garcia's attempts to exercise her rights under the Family Medical Leave Act ("FMLA"), and/or terminated her employment in retaliation for invoking those rights. CR 150.

WRPS timely filed this accelerated interlocutory appeal on November 24, 2014. CR 156–57. On December 3, 2014, this Court stayed all proceedings pending in the trial court "until further order of this court."

**Standard of Review**

Arbitration agreements are contracts and "interpreted under traditional contract principles." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). "[O]n appeals of orders denying arbitration under the Texas Arbitration Act ("TAA"), [the court] appl[ies] a no-evidence standard to the trial court's factual

determinations and a de novo standard to legal determinations." *Garcia v. Huerta*, 340 S.W.3d 864, 868 (Tex. App.—San Antonio 2011, pet. denied). Because "a presumption exists in favor of agreements to arbitrate . . . [c]ourts must resolve any doubts about an agreement to arbitrate in favor of arbitration." *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (internal citations omitted).

If a claim is subject to an arbitration agreement, then "the trial court has no discretion but to compel arbitration and stay its own proceedings" until arbitration is complete. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002); *see also* Tex. Civ. Prac. & Rem. Code § 171.021(c) (App. 67). The party opposing arbitration has the heavy burden of proving that "grounds exist at law or equity for [the arbitration agreement's] revocation . . . such as fraud or unconscionability." *Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716, 721 (Tex. App.—Fort Worth 1997, no writ); *see also* Tex. Civ. Prac. & Rem. Code § 171.001(b) (App. 66). "Because a trial court has no discretion to determine what the law is or to apply the law incorrectly, its clear failure to properly analyze or apply the law of unconscionability constitutes an abuse of discretion." *D.R. Horton-Tex., Ltd. v. Dragseth*, 02-12-000435, 2013 WL 3377121, at *3 (Tex. App.—Fort Worth July 3, 2013, no pet.) (citing *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008)).

Generally, the trial court is empowered to decide challenges to the validity of an arbitration agreement. *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008). However, if the parties' arbitration agreement clearly and unmistakably delegates questions regarding the agreement's validity and enforceability to the arbitrator, the court must enforce that provision. *Id.* If the trial court refuses to do so, the court of appeals has "no discretion but to direct the trial court to compel arbitration [of that issue] and stay [the] litigation." *Id.*

## Summary of the Argument

Arbitration agreements are favored by Texas public policy and must be enforced by the courts. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010). The evidence is uncontroverted that Bazan-Garcia agreed to arbitrate her disputes with WRPS. In addition, the parties expressly agreed that the arbitrator rather than the court would decide any question regarding the validity of their arbitration agreement—including the unconscionability defense that Bazan-Garcia raised before the trial court. Under these circumstances, the trial court had no discretion but to grant WRPS's motion to compel arbitration and stay the litigation. Its failure to do so here is clear error.

Additionally, even if Bazan-Garcia's unconscionability defense to arbitration could have been considered by the trial court, it was without merit. Bazan-Garcia claimed that under the parties' agreement, arbitration would be

6

prohibitively costly and prevent her from vindicating her statutory rights. In making her case, Bazan-Garcia entirely disregarded provisions of the contract that contradicted her interpretation, as well as the fact that the arbitrator can modify the complained-of provisions. Her arguments have already been rejected in similar cases by the Texas Supreme Court and Texas courts of appeals, and should have been rejected by the trial court. Finally, even if this Court concludes that it has the authority to consider Bazan-Garcia's defense and finds that one or more of the agreement's provisions is unconscionable, it is required to sever that provision so that the remainder of the arbitration agreement can be enforced.

Because WRPS met its burden of proving that the parties agreed to arbitrate this dispute, and because Bazan-Garcia failed to prove any valid defense to arbitration, this Court must reverse the judgment of the trial court and order it to compel arbitration of Bazan-Garcia's claims.

**Argument**

I. **The trial court erred in refusing to compel arbitration because Bazan-Garcia agreed to arbitrate her disputes with WRPS.**

WRPS presented uncontroverted evidence to the trial court that (1) Bazan-Garcia agreed to arbitrate her disputes with WRPS, and (2) all of Bazan-Garcia's claims fell within the scope of this agreement. *See infra* at 7–12. Bazan-Garcia did not contest any of this evidence, or deny that she signed and assented to the written arbitration agreements. Under the TAA, the trial court therefore had no

discretion to refuse to compel arbitration in this case. *See J.D. Edwards World Solutions*, 87 S.W.3d at 549; Tex. Civ. Prac. & Rem. Code § 171.001 (App. 66). Its refusal to do so denied WRPS the benefit of its bargain, and was error as a matter of law. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992).

### A. WRPS proved that Bazan-Garcia agreed to arbitrate her disputes with WRPS.

Texas and federal policy strongly favor arbitration agreements. *Tipps*, 842 S.W.2d at 268. Under the TAA, if the party seeking to compel arbitration shows that the parties entered into a written and valid arbitration agreement and that their dispute falls within the scope of the agreement, "the '[trial] court has no discretion but to compel arbitration and stay its own proceedings.'" *Forest Oil*, 268 S.W.3d at 56 n.14 (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001)); Tex. Civ. Prac. & Rem. Code § 171.025(a) (App. 68) ("The court shall stay a proceeding that involves an issue subject to arbitration if an order for arbitration or an application for that order is made under this subchapter."). This rule extends to arbitration provisions that are incorporated by reference into the agreement. *See In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002).

It is undisputed that Bazan-Garcia agreed to the written arbitration provisions contained in the Arbitration Agreement and incorporated by reference in the Acknowledgement. Bazan-Garcia signed the Arbitration Agreement on

8

September 27, 2011. App. 3. The contract was clearly entitled "Arbitration Agreement," and contained an express provision stating that, other than a worker's compensation claim covered by insurance, all disputes between WRPS and Bazan-Garcia "shall be submitted to arbitration in accordance with the rules of the American Arbitration Association." *Id.* By presenting a signed copy of the Arbitration Agreement to the trial court, WRPS proved the existence of an arbitration agreement between the parties. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) ("Because the [defendant] presented a signed arbitration agreement to the court . . . and the [plaintiffs] have presented no evidence that they did not sign the agreement, we conclude that, as a matter of law, the existence of an arbitration agreement among the parties was established.").

WRPS also presented a signed and uncontroverted copy of the Acknowledgement to the trial court. *See* App. 4. The Acknowledgement was signed by Bazan-Garcia on September 20, 2011, and represented that she had received the Employee Handbook and "underst[oo]d that it [was her] responsibility to read and comply with the policies contained in this handbook and any revisions made to it." *Id.* The Employee Handbook contained an arbitration provision stating that any "[p]roblems, disputes, or claims not resolved through [voluntary internal dispute] resolution steps are subject to final and binding arbitration." App. 13. By signing the Acknowledgement that incorporated by reference the

Employee Handbook's policies, Bazan-Garcia accepted the Handbook's arbitration provision. *See In re Dallas Peterbilt, L.L.P.*, 196 S.W.3d 161, 163 (Tex. 2006) (holding that an at-will employee who signed an acknowledgement form stating he had "received and carefully read or been given the opportunity to read" a summary of the employer's arbitration policy had assented to arbitration); *Halliburton*, 80 S.W.3d at 569 (holding that an at-will employee who accepted an agreement that incorporated an arbitration provision by reference had assented to arbitrate his disputes with his employer).

B. **WRPS proved that Bazan-Garcia's claims fall within the scope of her agreement to arbitrate.**

WRPS also proved, and Bazan-Garcia did not dispute, that all of Bazan-Garcia's claims in this litigation fall within the scope of the arbitration provisions contained in the Arbitration Agreement and Acknowledgement.

"When deciding whether claims fall within an arbitration agreement, courts employ a strong presumption in favor of arbitration." *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011) (citing *Cantella & Co*, 924 S.W.2d at 944). "The policy in favor of arbitration agreements is so compelling that a court should not deny arbitration *unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue. *Id.* (quoting *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995)) (emphasis in original).

In her Original Petition, Bazan-Garcia alleged that she was wrongfully discharged by WRPS after she notified WRPS of an "on-the-job injury and/or initiated the filing of a workers' compensation claim." CR 11. In her Amended Petition, filed after the trial court denied WRPS's motion to compel arbitration, Bazan-Garcia also alleged that WRPS prevented her from exercising her FMLA rights and/or "terminated her [employment] in retaliation for invoking her FMLA rights." CR 150.

The arbitration provision in the parties' Arbitration Agreement clearly encompasses these disputes. It states that "other than a worker's compensation claim covered by insurance, no dispute between [WRPS] and [Bazan-Garcia] which is in any way related to the employment of [Bazan-Garcia], including but not limited to a claim for wrongful termination . . . shall be the subject of a lawsuit filed in any state or federal court." App. 3. Both of Bazan-Garcia's claims are related to her employment and expressly allege she was wrongfully terminated, and neither are a "worker's compensation claim covered by insurance." These claims must therefore be submitted to arbitration under the express terms of the Arbitration Agreement.

Bazan-Garcia's claims are also within the scope of the Employee Handbook's arbitration provision, incorporated by reference into the Acknowledgement. Pursuant to that provision, Bazan-Garcia agreed that she

11

would arbitrate any "[p]roblems, disputes, or claims not resolved through [voluntary internal dispute] resolution steps." App. 13. None of the claims alleged by Bazan-Garcia in this litigation have been resolved through WRPS's voluntary internal dispute resolution process.

WRPS met its burden before the trial court by proving that the parties agreed to arbitrate their disputes, and that all of Bazan-Garcia's claims are within the scope of that agreement. Under the TAA, this Court must therefore reverse and remand this case for the trial court to compel arbitration of Bazan-Garcia's claims. *See Forest Oil*, 268 S.W.3d at 56, 61; Tex. Civ. Prac. & Rem. Code § 171.021(c) (App. 67).

## II. The trial court abused its discretion by denying WRPS's motion to compel arbitration on the grounds that the parties' agreement was unconscionable, because that defense is itself subject to arbitration.

Bazan-Garcia raised a single challenge against arbitration: she argued that the parties' agreement is substantively unconscionable because it limits discovery, requires both parties to pay some arbitration costs, and requires arbitration to take place in Dallas County, Texas. CR 72. At the hearing the trial court agreed with Bazan-Garcia, *see* RR 18, and subsequently denied WRPS's motion to compel arbitration on this ground, *see* App. 1. But the parties' arbitration agreement clearly and unmistakably empowered the *arbitrator*—not the court—to decide any issues of arbitrability, including whether the arbitration

12

agreement is unconscionable. The trial court was therefore required under the TAA to compel arbitration of Bazan-Garcia's unconscionability defense, and abused its discretion by denying WRPS's motion on this ground. *See Ernst & Young LLP v. Martin*, 278 S.W.3d 497, 500 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("[A]n arbitration clause that reallocates traditional court functions to the arbitrator is enforceable and cannot serve as a basis for denying a motion to compel arbitration.").

A. **The parties' arbitration agreement clearly and unmistakably delegated issues of arbitrability to the arbitrator.**

Under the TAA, like under the FAA, a party may revoke a written arbitration agreement "only on a ground that exists at law or in equity for the revocation of a contract," such as fraud or unconscionability. Tex. Civ. Prac. & Rem. Code § 171.001(b) (App. 66); *see also Forest Oil*, 268 S.W.3d at 56 n.12; 9 U.S.C. § 2 (FAA savings clause). The default rule is that the court decides such "gateway questions of arbitrability." *Rent-A-Center, West v. Jackson*, 561 U.S. 63, 68–69 (2010) (internal quotation marks omitted). However, the parties can delegate these issues to the arbitrator rather than the court, so long as the agreement "clearly and unmistakably" demonstrates that this was the parties' intent. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 79 (2002); *see also In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005). Because "[t]he issue of arbitrability is subject to virtually identical analysis under either the FAA or the

13

TAA," courts may rely on authorities applying either statute in evaluating an agreement. *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229 n.4 (Tex. App.—Dallas 2010, pet. denied).

"When, as here, parties agree to a broad arbitration clause and explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Saxa*, 312 S.W.3d at 230. In *Saxa*, for example, the parties agreed to arbitrate "any claim, dispute or other matter" related to their contract, "in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." *Id.* at 226 (modification omitted). The AAA Construction Rules contain a delegation clause empowering the arbitrator "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.* at 228–29.

Because the parties' broad arbitration agreement incorporated the AAA Rules, the court of appeals held that the parties' arbitrability dispute—in that case, whether joinder was permissible—had to be decided by the arbitrator rather than the court. *Id.* at 230. It emphasized that a majority of courts have reached this same conclusion. *Id.* (collecting cases); *see also Aspri Inv., LLC*, 04-10-00573-CV, 2011 WL 3849487, at \*9 (Tex. App.—San Antonio 2011, pet. dism'd)

(enforcing the AAA Rules' delegation clause because incorporating the Rules into an agreement to arbitrate all disputes related to the parties' lease "constitutes clear and unmistakable evidence of the parties' intent to delegate issues of arbitration to the arbitrator"); *Petrofac, Inc. v. Dyn McDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) ("We agree with most of our sister circuits that the express adoption of the [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

The same result is required here. The AAA Employment Rules contain a delegation clause that is identical to the one enforced in *Saxa*: "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections to the existence, scope or validity of the arbitration agreement." AAA Rule 6(a) (App. 30). The Employee Handbook, incorporated by reference into the Acknowledgement, states that all "[p]roblems, disputes, or claims not resolved through [voluntary internal dispute] resolution steps are subject to final and binding arbitration . . . conducted under the Employment Dispute Resolution Rules of the American Arbitration Association." App. 13. *See Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (agreement clearly and unmistakably delegated issues of arbitrability to the arbitrator by requiring parties to use "best efforts" to resolve their dispute or submit it to arbitration under the AAA Rules). The Arbitration Agreement provides that "to resolve in a speedy and

15

inexpensive way any legal controversy which may arise," the parties must arbitrate any dispute "which is in any way related to the employment of [Bazan-Garcia] . . . in accordance with the rules of the American Arbitration Association." App 3. Only a "worker's compensation claim covered by insurance" is exempt, *see id.*, as such claims cannot be the subject of an arbitration agreement under state law. *See* Tex. Civ. Prac. & Rem. Code § 171.002(a)(4).

Bazan-Garcia and WRPS entered into agreements with broad arbitration provisions that incorporated all of the AAA Employment Rules, including the delegation clause. The parties did not reserve the right to seek judicial relief for a broad array of claims, or specify that the AAA Rules would only apply to their agreement in a limited manner. *Compare with Burlington Res. Oil & Gas Co. LP v. San Juan Basin Royalty Trust*, 249 S.W.3d 34, 42–43 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (holding agreement did not incorporate delegation clause where parties agreed to arbitrate only certain "audit disputes" and specified the agreement's terms controlled over the AAA Rules in the event of a conflict); *Haddock v. Quinn*, 287 S.W.3d 158, 174–75 (Tex. App.—Fort Worth 2009, pet. denied) (holding agreement did not delegate arbitrability to arbitrator because it only incorporated the AAA Rules "to the extent not inconsistent" with the agreement and specified in detail the procedures and scope of arbitration (internal quotation marks omitted)). Consequently, Bazan-Garcia

16

and WRPS clearly and unmistakably agreed that the arbitrator rather than the court would decide any arbitrability disputes between them, and the trial court abused its discretion by refusing to enforce that bargain. *See Ernst & Young LLP*, 278 S.W.3d at 501 (granting mandamus relief where trial court failed to enforce an unchallenged delegation clause).

**B.** **Bazan-Garcia is bound to arbitrate her unconscionability defense because she failed to prove that the delegation clause was invalid.**

Because she agreed to delegate issues of arbitrability to the arbitrator, Bazan-Garcia could only have the trial court decide her unconscionability defense if she proved that the delegation clause itself was invalid and unenforceable. *Rent-A-Center*, 561 U.S. 63. Instead, Bazan-Garcia focused on proving the merits of her unconscionability defense, *see* CR 72–82, and erroneously claimed that the trial court could decide that issue because her petition alleged a statutory cause of action, *see* RR 13. Neither of these grounds allows Bazan-Garcia to avoid the delegation clause in her agreements.

Bazan-Garcia's unconscionability defense is nearly identical to one raised by the plaintiff in *Rent-A-Center*, which the U.S. Supreme Court held had to be decided by the arbitrator rather than the court. *See* 561 U.S. 63. The plaintiff in *Rent-A-Center* filed a statutory employment-discrimination lawsuit against his former employer, and opposed arbitration on the grounds that the agreement was unconscionable because it limited discovery and required the parties to split the

costs of arbitration. *Id.* at 74. The parties' arbitration agreement included a provision delegating issues of arbitrability to the arbitrator. *Id.* at 66. Despite this provision, the U.S. Court of Appeals for the Ninth Circuit held that "the threshold question of unconscionability [was] for the court" to decide. *Id.* at 67.

The Supreme Court reversed. *Id.* at 74–76. Because a "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement" and must be enforced like any other contract, the plaintiff could only avoid it by proving that the clause *itself* was invalid. *Id.* at 69–70. Before the trial court, however, the plaintiff focused solely on proving the merits of his unconscionability defense. *Id.* at 73–74 (explaining that plaintiff "did not make any arguments specific to the delegation provision; [instead] he argued that the fee-sharing and discovery procedures rendered the *entire* Agreement invalid") (emphasis in original). Consequently, the Supreme Court held that the trial court was required to compel arbitration of the plaintiff's unconscionability defense. *Id.* at 75. It refused to consider a challenge to the delegation provision that the plaintiff raised for the first time in his brief to the Supreme Court, on the grounds that it was "too late." *Id.* at 75–76.

Like the plaintiff in *Rent-A-Center*, Bazan-Garcia opposed WRPS's motion to compel arbitration on the grounds that the agreement limited the parties' access to discovery and required them to split arbitration costs, and is therefore

18

unconscionable. *See* CR 72. But even though WRPS's motion discussed and analyzed the delegation clause that was incorporated into the parties' arbitration agreement, *see* CR 25–28, Bazan-Garcia's response did not address that clause at all. Instead, Bazan-Garcia focused solely on the merits of her unconscionability defense. *See* CR 72–82. Because Bazan-Garcia failed to prove that the delegation clause is invalid, she is bound to that agreement. *See Rent-A-Center*, 561 U.S. at 74.

In addition, Bazan-Garcia cannot avoid arbitration based on the statutory nature of her claims. At the hearing, Bazan-Garcia suggested that the trial court was not required to enforce the delegation clause because her asserted causes of action are based on a statute. *See* RR 13. But Bazan-Garcia has failed to identify any case in which a court refused to enforce a delegation clause on the grounds that the party opposing arbitration was asserting statutory claims, and WRPS is aware of no such authority. To the contrary, the claims that the plaintiff filed against his employer in *Rent-A-Center* were statutory in nature, and that fact had no bearing on the Court's decision to enforce the delegation clause. *See* 561 U.S. at 74–75; *see also IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799, 808 (Tex. App.—El Paso 2012, no pet.) (enforcing delegation clause in arbitration agreement in case where plaintiff alleged gender-discrimination claims against employer).

"[A] trial court has no discretion to determine what the law is or to apply the law incorrectly." *Poly-America*, 262 S.W.3d at 349. The law in this area is clear: a court has no discretion to refuse to enforce an unchallenged delegation clause. *See Rent-A-Center*, 561 U.S. at 75–76; *Forest Oil*, 268 S.W.3d at 61 (holding that because the arbitration agreement's delegation clause was "not challenged on any legal or public policy grounds," the Court had "no discretion but to direct the court to compel arbitration and stay [this] litigation"). If Bazan-Garcia believes that the arbitration agreement is unconscionable, she can still make that argument. In accordance with her agreements, however, she must do so in the forum of arbitration.

## III. In the alternative, the trial court erred in denying WRPS's motion to compel arbitration because Bazan-Garcia did not prove that the parties' arbitration agreement is unconscionable.

A party opposing arbitration on the grounds of unconscionability bears the heavy burden of proving this defense. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 893 (Tex. 2010). Bazan-Garcia failed to meet that rigorous standard. Arbitration of her claims was therefore required, even if the trial court had authority to consider the merits of this defense.

### A. Legal Standard

"Whether a contract is . . . unconscionable at the time it is formed is a question of law." *Poly-America*, 262 S.W.3d at 349 (citing *Hoover Slovacek LLP*

*v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006)). "In general, a contract will be found unconscionable if it is grossly one-sided." *Id.* at 348; *see also Venture Cotton Co-op v. Freeman*, 435 S.W.3d 222, 228 (Tex. 2014) ("One of the earliest decisions to apply the defense described an unconscionable contract as one that 'no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'") (internal citation omitted). Because arbitration is a favored method of dispute resolution, the Texas Supreme Court has cautioned that courts "'should be wary of setting the bar for holding arbitration clauses unconscionable too low' as that would undermine the 'liberal federal policy favoring arbitration agreements.'" *Venture Cotton*, 435 S.W.3d at 232 (quoting *Olshan*, 328 S.W.3d at 893).

"Agreements to arbitrate disputes between employers and employees are generally enforceable under Texas law; there is nothing per se unconscionable about an agreement to arbitrate employment disputes and, in fact, Texas law has historically favored agreements to resolve such disputes by arbitration." *Poly-America*, 262 S.W.3d at 348. Nor is there anything inherently unconscionable about an agreement to arbitrate a statutory claim. "When parties agree to arbitrate a statutory claim, 'a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Venture Cotton*, 435 S.W.3d at 229 (quoting *Mitsubishi Motors Corp. v.*

21

*Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  Thus, "an arbitration agreement covering statutory claims is valid so long as the arbitration agreement does not waive substantive rights and remedies of the statute and the arbitration procedures are fair so that the employee may effectively vindicate his statutory right." *Id.* (quoting *Poly-America*, 262 S.W.3d at 352).

**B.    Bazan-Garcia failed to prove that arbitration under the parties' agreement would be more expensive than litigation, and effectively prevent her from vindicating her statutory rights.**

Bazan-Garcia claims that the parties' agreement requires her to split the costs of arbitration equally with WRPS, and that AAA arbitration of her claims could cost upward of $20,000.  CR 77–78.  She contends that this would effectively force her to abandon these claims, because she cannot "risk incurring a substantial debt exceeding $10,000.00 in arbitrator fees."  CR 81.

In assessing whether an arbitration agreement is unconscionable, the court must determine whether the cost of arbitration would effectively prevent the claimant from pursuing and vindicating her statutory rights.  *Poly-America*, 262 S.W.3d at 356.  The agreement may be "unconscionable if 'the existence of large arbitration costs could preclude a litigant from effectively vindicating his or her federal [or state]  statutory rights in the arbitral forum.'"  *Olshan*, 328 S.W.3d at 892 (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)) (internal modifications omitted).  Because arbitration is favored, it is not enough

for the claimant to show there is a "risk" that arbitration will be prohibitively expensive. *Id.* at 892. Instead, "[t]he party opposing arbitration bears the burden to show that the costs of arbitration render it unconscionable . . . [by] 'showing the likelihood of incurring such costs.'" *Id.* at 893 (quoting *Green Tree*, 531 U.S. at 92); *see also FirstMerit Bank*, 52 S.W.3d at 757 ("Because the record contains no specific evidence that the [plaintiffs] will actually be charged excessive arbitration fees, we conclude that there is legally insufficient evidence that the plaintiffs would be denied access to arbitration based on excessive costs."). In making this determination, "a comparison of the total cost of [arbitration and litigation] is the most important factor." *Olshan*, 328 S.W.3d at 894–95.

### 1.    Bazan-Garcia failed to prove that arbitrating her claims is likely to cost upwards of $20,000.

Bazan-Garcia estimated that arbitration in this case would cost more than $20,000, based on the costs of three allegedly similar arbitrations that were conducted through the AAA. CR 85–94. The parties' agreement, however, does not require them to pursue arbitration through the AAA; it only states that arbitration will be conducted "in accordance with" and "under" the AAA Rules. App. 3, 13. "Under this language, the AAA may administer the arbitration, but the parties are not required to have the arbitration administered by the AAA." *Aspen Tech., Inc. v. Shasha*, 253 S.W.3d 857, 864 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Moreover, evidence of what costs were incurred by other parties in

23

other arbitrations is, by itself, legally insufficient to meet Bazan-Garcia's burden of proving what arbitration will cost her in this particular case.

In *Shasha*, the parties entered into an arbitration agreement stating that arbitration would be "in accordance with the [AAA] Rules." 253 S.W.3d at 864. In support of its argument that arbitration would prohibitively expensive, the plaintiff presented evidence showing what amounts were likely to be charged by the AAA and AAA arbitrators. *Id.* The court of appeals found that this evidence was "legally insufficient to support the trial court's implied finding that [the plaintiff] satisfied his burden of providing specific evidence showing a likelihood that he would be denied access to arbitration based on excessive arbitration costs," since the parties were not obligated to arbitrate through the AAA. *Id.* The court of appeals held the trial court had abused its discretion by denying the defendant's motion to compel arbitration on this basis. *Id.* at 865. Bazan-Garcia's evidence in support of her unconscionability defense is also "legally insufficient," as it similarly presumes that arbitration will take place through the AAA. *See also Green Tree*, 531 U.S. at 91 n.6 (holding that plaintiff failed to provide any "basis on which to ascertain the actual costs and fees to which she would be subject in arbitration" because she "failed to make any factual showing that the [AAA] would conduct the arbitration, or that, if it did, she would be charged the filing fee or arbitrator's fee that she identified").

In addition, Bazan-Garcia's evidence was inadequate because it relied entirely on fees that other parties have incurred. In *Olshan*, the plaintiffs argued that arbitration would be prohibitively costly, and in support of this claim "provided two invoices from the AAA for arbitration in, as the [plaintiffs] allege, 'similar cases' to show the likelihood of excessive litigation costs." 328 S.W.3d at 897. The Supreme Court held that "[m]erely showing that other claimants have incurred arbitration costs of some amount falls well short of specific evidence that these particular parties will be charged excessive fees." *Id.* The Court also noted that there was no evidence that the plaintiffs had "made any effort to reduce the likely charges through requests for fee waivers, pro bono, arbitrators, or even simply requesting a one arbitrator panel." *Id.* Because "[s]ubstantive unconscionability threatens to become the exception that swallows the rule if all that must be done to avoid arbitration is to assume the most expensive possible scenario," the Court concluded that "there is no legally sufficient evidence that [the arbitration] fees prevent the [plaintiffs] from effectively pursuing their claim in the arbitral forum." *Id.* at 897. Like the plaintiffs in *Olshan*, Bazan-Garcia's evidence consisted entirely of invoices from other arbitrations, *see* CR 85–95, and therefore did not support the trial court's finding that the parties' agreement was unconscionable.

25

**2. Under the parties' agreement, WRPS will bear almost all of the costs of arbitration.**

Regardless of what the overall cost of arbitrating her claims may be, Bazan-Garcia's contention that she will be forced to bear half of these costs is directly contradicted by the terms of the parties' agreement. The Employee Handbook, on which Bazan-Garcia relies, states that "[e]mployees who choose to use the arbitration process to resolve a problem will be expected to share the cost of the arbitration proceeding with WRPS, LP." App. 13. This provision does not require the parties to equally split the costs of arbitration, and Bazan-Garcia provides no authority in support of her interpretation of this language.

Moreover, pursuant to the AAA Rules that the parties agreed to, arbitration costs under an employer-promulgated plan such as the one at issue in this case are almost entirely borne by the employer, rather than divided evenly between the parties. *See* App. 45–47. Bazan-Garcia is only required to pay an initial filing fee—$200 if she files with the AAA—and may also have to pay additional fees if she postpones or cancels a scheduled hearing, as well as bear any expenses for witnesses that she chooses to produce at the hearing. AAA Rule 45 (App. 43); AAA Rule 48(i) (App. 45); AAA Rule 48(iii) (App. 47). These administrative fees may be "defer[red] or reduce[d]" if Bazan-Garcia shows that they would cause her "extreme hardship." AAA Rule 43 (App. 43). WRPS, in contrast, will be responsible for paying a non-refundable filing fee in the amount of

$1,350.  WRPS must also pay all fees associated with the hearings, and all of the arbitrator's fees and expenses.  AAA Rule 48(i)–(iii) (App. 45–47).

The AAA Rules are controlling over any allegedly contrary provision in the parties' arbitration agreement, and would therefore defeat Bazan-Garcia's unconscionability argument even if her reading of the Employee Handbook's cost-sharing clause was correct.  *See* AAA Rule 1 (App. 28) (arbitrator must apply AAA Rules if "an adverse material inconsistency exists between the arbitration agreement and these rules").  Far from causing Bazan-Garcia to "risk incurring a substantial debt exceeding $10,000.00," CR 82, therefore, the agreement only requires Bazan-Garcia to pay a filing fee of $200.00—less than the fee she paid to file this lawsuit in state court, *see id.* at 81 (stating that Bazan-Garcia paid 280.00 in expenses to file her lawsuit in state court).  Even that small fee could be avoided or reduced if Bazan-Garcia shows that it would be overly burdensome, *see* AAA Rule 43 (App. 43), or files the arbitration outside of the AAA.  Furthermore, by pursuing her claims in arbitration rather than litigation, Bazan-Garcia could decrease her overall expenses by avoiding lengthy and expensive discovery and appeals.  *See Olshan*, 328 S.W.3d at 894 ("The desire to avoid steep litigation expenses—including the costs of longer proceedings, more complicated appeals on the merits, discovery, investigations, fees, and expert witnesses—is the purpose of arbitration in the first place." (citing *Tipps*, 842 S.W.2d at 272–73)).

Because Bazan-Garcia failed to prove that arbitration will be more costly than litigation and thereby prevent her from vindicating her statutory rights, she failed to show that the arbitration agreement is unconscionable. *See Olshan*, 328 S.W.3d at 894–95.

**C.    An arbitration agreement cannot be found unconscionable based on provisions that the arbitrator is empowered to modify.**

Bazan-Garcia took issue with three provisions in the parties' agreement: (1) the requirement that the parties "share" some costs of arbitration, (2) the prohibition on either party taking more than one deposition; and (3) conducting the arbitration hearing in Dallas County, Texas. CR 72. None of these provisions is inherently unconscionable, and Bazan-Garcia does not claim they are. *See*, *e.g.*, *Poly-America*, 262 S.W.3d at 355–56 (holding that "fee-splitting provisions that operate to prohibit an employee from fully and effectively vindicating statutory rights are not enforceable," but declining to hold that fee-splitting or fee-sharing agreements are "unenforceable per se"); *see also id.* at 357 (enforcing an arbitration agreement limiting the parties to one deposition each because the plaintiff failed to prove it was "insufficient to allow [him] a fair opportunity to present his claims" (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)). Moreover, if circumstances cause any of these provisions to become unconscionable, the arbitrator has the power to modify them.

28

The trial court therefore abused its discretion by finding that the arbitration is unconscionable.

As a matter of law, an agreement is not unconscionable if its potentially objectionable provisions can be modified by the arbitrator. In *Poly-America*, for example, the parties entered into an agreement that required them to equally split the costs of arbitration up to a particular amount, and limited the amount of discovery that each party could pursue, including only allowing each side to take "one oral deposition of no more than six hours." 262 S.W.3d at 344. Like Bazan-Garcia, the plaintiff in *Poly-America* alleged that his employer had wrongfully discharged him in retaliation for filing a workers' compensation claim, and opposed arbitration on the grounds that the agreement's cost-splitting provisions and discovery limitations would effectively prevent him from vindicating his statutory rights. *Id.*

The Supreme Court rejected both of these challenges. The parties' agreement "specifically provide[d] that the arbitrator may modify unconscionable terms." *Id.* at 357. As a result, at this stage of the proceedings the plaintiff could not show a likelihood that he would be forced to pay the complained-of costs, or unable to obtain necessary discovery. *Id.* at 357–58 (describing the plaintiff's arguments as "speculative"); *see also FirstMerit Bank, N.A.*, 52 S.W.3d at 757 (holding plaintiffs failed to prove arbitration agreement was unconscionable

because "the AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees"). The Court also emphasized that the arbitrator, rather than the court, "is better situated to assess" whether the cost or discovery provisions in the agreement would hinder the plaintiff's ability to vindicate his statutory rights, and "to modify the contract's terms accordingly." *Poly-America*, 262 S.W.3d at 357–58.

For the reasons given by the Supreme Court in *Poly-America*, Bazan-Garcia cannot prove that any of the provisions she complains of make the arbitration agreement unconscionable. Under the AAA Rules, Bazan-Garcia is only required to pay an initial filing fee, while WRPS must pay virtually all other expenses of arbitration. *See* App. 45–47. If paying the $200 filing fee would cause Bazan-Garcia "extreme hardship," then the AAA may "defer or reduce" it. AAA Rule 43 (App. 43). Likewise, limiting each party to taking one deposition is not unconscionable, since "[t]he arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." AAA Rule 9 (App. 32). Finally, the agreement's venue provision is not unconscionable because the arbitrator may ultimately decide the locale of the arbitration, "having regard for the

contentions of the parties and the circumstances of the arbitration." AAA Rule 10 (App. 32).[3]

An arbitration agreement is unconscionable only if it is "so one-sided that it is unconscionable under the circumstances existing when the parties made the contract," *FirstMerit Bank*, 52 S.W.3d at 757, and "sufficiently shocking or gross to compel the court to intercede." *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App.—Waco 2005, pet. denied). The agreements between Bazan-Garcia and WRPS do not meet this standard. They incorporate the AAA Rules and are typical for arbitration agreements between employers and their employees, as well as similar to those upheld by the Supreme Court in *Poly-America*. Indeed, it will be less expensive for Bazan-Garcia to arbitrate her claims than to try (and appeal) those claims in state court, *see infra* at Part III.B., and she will also have the opportunity to ask the arbitrator to change any objectionable cost, discovery, and venue provisions, *see infra* at Part III.C. By finding such an agreement unconscionable, the trial court abused its discretion, and its judgment must be reversed. *See Poly-America*, 262 S.W.3d at 349.

---

[3] In addition, none of these provisions is "one-sided," which is generally required for a provision to be deemed unconscionable. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001).

**IV.** **If any provision of the arbitration agreement is unconscionable, this Court should sever it and enforce the remainder of the agreement.**

Finally, if this Court concludes that any of the arbitration agreement's terms is unconscionable, then it should sever that term and remand the case for the trial court to compel arbitration under the remainder of the agreement.

"[W]here a term rather than the entire contract is unconscionable, the appropriate remedy is ordinarily to deny effect to the unconscionable term." *Venture Cotton*, 435 S.W.3d at 230 (quoting Restatement (Second) of Contracts § 208 cmt. g (1981)) (internal modification omitted); *see also Poly-America*, 262 S.W.3d at 360 ("An illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement."). In *Venture Cotton*, the issue was whether a provision in an arbitration agreement that prohibited the plaintiff from recovering attorneys' fees under the Texas Deceptive Trade Practices Act was unconscionable. The Texas Supreme Court held that if the provision was unconscionable, then the court of appeals should have severed it and enforced the remainder of the agreement, even though the defendant had not requested this remedy from the trial court. 435 S.W.3d at 230 (explaining that on interlocutory appeal, "[c]onservation of time and resources recommend that we consider the issue now because nothing prevents [the defendant] from urging severance in the trial court and, if denied, from renewing its complaint in yet another interlocutory appeal").

Bazan-Garcia claims that three provisions in the parties' arbitration agreement are unconscionable: the cost-sharing provision, the limitation on depositions, and the venue clause. None of these provisions constitutes the "essential purpose of the agreement," *Poly-America*, 262 S.W.3d at 360, which is "to resolve in a speedy and inexpensive way, any legal controversy that may arise," App. 3. Consequently, if any or all of these provisions is found to be unconscionable, it must be severed so that the remainder of the arbitration agreement can be enforced. *See Venture Cotton*, 435 S.W.3d at 230–31 (holding that "the court of appeals erred in declining to sever the objectionable limitation" from the arbitration agreement).

## Conclusion and Prayer for Relief

For the reasons set forth above, WRPS respectfully requests the Court reverse the trial court's Order denying WRPS's motion to compel arbitration, and direct the trial court to compel arbitration of all of Bazan-Garcia's claims and abate this litigation.

Respectfully submitted,

**BAKER BOTTS L.L.P.**

By: */s/ Jennifer M. Trulock*

Jennifer M. Trulock
State Bar No. 90001515
2001 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6500  Telephone
(214) 953-6503  Facsimile
jennifer.trulock@bakerbotts.com

Stephanie F. Cagniart
State Bar No. 24079786
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701-4078
(512) 322-2500  Telephone
(512) 322-2501  Facsimile
stephanie.cagniart@bakerbotts.com

**ATTORNEYS FOR APPELLANT**
**WESTERN RIM PROPERTY**
**SERVICES, INC.**

## Certificate of Compliance

This brief complies with the type-volume limitations of Tex. R. App. P. 9.4, as it contains 7,637 words, excluding the parts of the brief exempted by Rule 9.4(i)(1).

> */s/ Stephanie F. Cagniart*
> Stephanie F. Cagniart

## Certificate of Service

I hereby certify that on December 24, 2014, a copy of the foregoing was served by the Court's CM/ECF electronic service and by electronic mail on the following parties:

Javier Espinoza
Josue F. Garza
The Espinoza Law Firm, PLLC
503 E. Ramsey, Ste. 103
San Antonio, Texas 78216
210-229-1302 (Facsimile)
josue@espinozafirm.com

> */s/ Stephanie F. Cagniart*
> Stephanie F. Cagniart

**Index to Appendix**

A.  Trial Court's Order Concerning Defendant's Motion to Compel Arbitration and Motion for Protective Order  (App. 1–2)

B.  Arbitration Agreement  (App. 3)

C.  Employee Acknowledgement Form  (App. 4)

D.  Employee Handbook, WRPS, LP  (App. 5–13)

E.  Employment Arbitration Rules and Mediation Procedures, American Arbitration Association  (App. 14–65)

F.  Tex. Civ. Prac. & Rem. Code §§ 171.001, 171.021 and 171.025  (App. 66–68)

# APPENDIX

# EXHIBIT A

# 2014CV01064

CAUSE NO. 2014CV01064

E-FILED
Bexar County, County Clerk
Gerard Rickhoff
Accepted Date:11/10/2014 9:10:58 AM
Accepted By: Leticia Silva
Leticia Silva

| | | |
|---|---|---|
| PAULA BAZAN-GARCIA, | § | IN THE COUNTY COURT Deputy Clerk |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | AT LAW NO. 03 |
| | § | |
| WESTERN RIM PROPERTY SERVICES, | § | |
| INC. | § | |
| | § | |
| Defendant | § | BEXAR COUNTY, TEXAS |

## ORDER CONCERNING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND MOTION FOR PROTECTIVE ORDER

On this the 6th day of November 2014 came to be heard Defendant's Motion to Compel Arbitration and Motion for Protective Order. The Court having considered the Motions and all applicable arguments, case law and evidence is of the opinion that the arbitration policy contained in Defendant's dispute resolution policy is unconscionable and unenforceable.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant's Motion to Compel Arbitration is hereby in all things DENIED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant's Motion for Protective Order is hereby in all things DENIED.

SIGNED and ENTERED this the ___ day of _____, 2014.

_____
HON. JUDGE PRESIDING

APPROVED AS TO FORM:

13

144

Submit Date:11/10/2014 9:09:08 AM
App.001

JOSUE F. GARZA
Espinoza Law Firm, PLLC
Attorneys for Plaintiff
503 E. Ramsey, Ste. 103
San Antonio, Texas 78216

JENNIFER . TRULOCK
STEPHANIE F. CAGNIART
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701-4078

14

145

2
App.002

# EXHIBIT B

# ARBITRATION AGREEMENT

It is in the interest of WRPS III, LP and their employees to resolve in a speedy and inexpensive way, any legal controversy that may arise. Therefore, other than a worker's compensation claim covered by insurance, no dispute between the companies and the undersigned which is in any way related to the employment of the undersigned, including but not limited to a claim for wrongful termination, discrimination and/or harassment, and worker's compensation not covered by insurance, shall be the subject of a lawsuit filed in any state or federal court. Instead, any such dispute shall be submitted to arbitration in accordance with the rules of the American Arbitration Association ("AAA"). Prior to the filing of any such proceeding, the filing party shall give twenty (20) days prior written notice.

Each party to arbitration shall be entitled to take only one deposition. Any arbitration relating to any dispute covered by this Agreement shall be arbitrated in Dallas County, Texas.

At the conclusion of the arbitration, the arbitrator shall make such findings of fact and state the evidentiary basis of such finding. The Arbitrator shall also issue a ruling and explain how the findings of fact justify his ruling. Any court of competent jurisdiction shall enter judgment on the arbitration award and shall review the award as permitted by law.

BY: _____
Marcus D. Hiles
President
WRPS III, LP

Date: _____9/7/06_____

By: _____

Date: _____9-27-11_____

39

# EXHIBIT C



*WRPS III, LP*
*Employee Handbook WRPS III, LP*

EMPLOYEE ACKNOWLEDGEMENT FORM

The employee handbook describes important information about WRPS III, LP, and I understand that I should consult the Human Resources Department regarding any questions not answered in the handbook.

I have entered into my employment relationship with WRPS III, LP voluntarily and acknowledge that there is no specified length of employment. Accordingly, either I or WRPS III, LP can terminate the relationship at will, with or without cause, at any time, so long as there is no violation of applicable federal or state law.

Since the information, policies, and benefits described here are necessarily subject to change, I acknowledge that revisions to the handbook may occur, except to WRPS III, LP's policy of employment-at-will. All such changes will be communicated through official notices, and I understand that revised information may supersede, modify, or eliminate existing policies. Only the chief executive officer of WRPS III, LP has the ability to adopt any revisions to the policies in this handbook.

Furthermore, I acknowledge that this handbook is neither a contract of employment nor a legal document. I have received the handbook, and I understand that it is my responsibility to read and comply with the policies contained in this handbook and any revisions made to it.

EMPLOYEE'S NAME (printed): *Paula C. Bazan-Garcia*

EMPLOYEE'S SIGNATURE: *Paula C.B. Garcia*

DATE: *Sept 20, 2011*

37

# EXHIBIT D



# Employee Handbook
# WRPS, LP

10/01/2011

45

App.005



**WRPS, LP**

# Table of Contents

| No. | Policy | Effective Date: | Revision Date: | Page |
|-----|--------|-----------------|----------------|------|
| **INTRODUCTION** | | | | |
| 020 | Employee Welcome Message | 12/1/1999 | 1/1/2006 | 1 |
| 030 | Organization Description | 12/1/1999 | 1/1/2006 | 2 |
| 040 | Introductory Statement | 12/1/1999 | 1/1/2006 | 3 |
| 051 | Employee Acknowledgement Form | 12/1/1999 | 1/1/2006 | 4 |
| | | | | |
| **EMPLOYMENT** | | | | |
| 101 | Nature of Employment | 12/1/1999 | 1/1/2000 | 5 |
| 102 | Employee Relations | 12/1/1999 | 1/1/2006 | 6 |
| 103 | Equal Employment Opportunity | 12/1/1999 | 1/1/2006 | 7 |
| 104 | Business Ethics and Conduct | 12/1/1999 | 1/1/2006 | 8 |
| 107 | Immigration Law Compliance | 12/1/1999 | 1/1/2000 | 9 |
| 108 | Conflicts of Interest | 12/1/1999 | 1/1/2006 | 10 |
| 110 | Outside Employment | 12/1/1999 | 1/1/2006 | 11 |
| 112 | Non-Disclosure | 12/1/1999 | 1/1/2006 | 12 |
| 114 | Disability Accommodation | 12/1/1999 | 1/1/2006 | 13 |
| 180 | Personal Relationships in the Workplace | 11/19/2004 | 1/1/2006 | 14 |
| | | | | |
| **EMPLOYMENT STATUS & RECORDS** | | | | |
| 201 | Employment Categories | 12/1/1999 | 1/1/2006 | 16 |
| 202 | Access to Personnel Files | 12/1/1999 | 1/1/2006 | 18 |
| 203 | Employment Reference Checks | 12/1/1999 | 1/1/2000 | 19 |
| 204 | Personnel Data Changes | 12/1/1999 | 1/1/2006 | 20 |
| 205 | Introductory Period | 12/1/1999 | 1/1/2006 | 21 |
| 208 | Employment Applications | 12/1/1999 | 1/1/2006 | 22 |
| 209 | Performance Evaluation | 12/1/1999 | 1/1/2006 | 23 |
| 210 | Job Descriptions | 12/1/1999 | 1/1/2006 | 24 |
| 280 | Confidentiality of Salary | 12/1/1999 | 1/1/2006 | 25 |
| | | | | |
| **EMPLOYEE BENEFIT PROGRAMS** | | | | |
| 301 | Employee Benefits | 12/1/1999 | 1/1/2006 | 26 |
| 303 | Vacation Benefits | 12/1/1999 | 10/1/2009 | 27 |
| 304. | Child Care Benefits | 12/1/1999 | 1/1/2006 | 29 |
| 305 | Holidays | 12/1/1999 | 1/1/2006 | 30 |

App.006



**WRPS, LP**

| | | | | |
|---|---|---|---|---|
| 307 | Sick Leave Benefits | 12/1/1999 | 10/1/2009 | 31 |
| 308 | Time Off to Vote | 12/1/1999 | 1/1/2006 | 33 |
| 309 | Bereavement Leave | 12/1/1999 | 1/1/2006 | 34 |
| 310 | Relocation Benefits | 12/1/1999 | 1/1/2006 | 35 |
| 311 | Jury Duty | 12/1/1999 | 1/1/2006 | 36 |
| 312 | Witness Duty | 12/1/1999 | 1/1/2006 | 37 |
| 313 | Benefits Continuation (COBRA) | 12/1/1999 | 1/1/2006 | 38 |
| 314 | Educational Assistance | 12/1/1999 | 1/1/2006 | 39 |
| 316 | Health Insurance | 12/1/1999 | 1/1/2006 | 40 |
| 317 | Life Insurance | 12/1/1999 | 1/1/2006 | 41 |
| 320 | 401(k) Savings Plan | 12/1/1999 | 1/1/2006 | 42 |
| 326 | Flexible Spending Account (FSA) | 12/1/1999 | 1/1/2006 | 43 |
| 328 | Partnership Participation Units | 12/1/1999 | 1/1/2006 | 44 |
| 330 | Annual Incentive Trip | 12/1/1999 | 1/1/2006 | 45 |

TIMEKEEPING/PAYROLL

| | | | | |
|---|---|---|---|---|
| 401 | Timekeeping | 12/1/1999 | 1/1/2000 | 46 |
| 403 | Paydays | 12/1/1999 | 1/1/2000 | 47 |
| 405 | Employment Termination | 12/1/1999 | 1/1/2006 | 48 |
| 407 | Severance Pay | 12/1/1999 | 1/1/2006 | 49 |
| 409 | Administrative Pay Corrections | 12/1/1999 | 1/1/2006 | 50 |
| 410 | Pay Deductions and Setoffs | 12/1/1999 | 1/1/2006 | 51 |

WORK CONDITIONS & HOURS

| | | | | |
|---|---|---|---|---|
| 502 | Work Schedules | 12/1/1999 | 1/1/2006 | 52 |
| 504 | Use of Phone and Mail Systems | 12/1/1999 | 1/1/2006 | 53 |
| 505 | Smoking | 12/1/1999 | 1/1/2006 | 54 |
| 506 | Rest and Meal Periods | 12/1/1999 | 1/1/2006 | 55 |
| 507 | Overtime | 12/1/1999 | 1/1/2006 | 56 |
| 512 | Business Travel Expenses | 12/1/1999 | 1/1/2009 | 57 |
| 514 | Visitors in the Workplace | 12/1/1999 | 1/1/2006 | 58 |
| 516 | Computer and Email Usage | 12/1/1999 | 1/1/2006 | 60 |
| 517 | Internet Usage | 12/1/1999 | 1/1/2006 | 61 |
| 522 | Workplace Violence Prevention | 12/1/1999 | 1/1/2006 | 63 |
| 526 | Cell Phone Usage | 12/1/1999 | 1/1/2006 | 65 |

LEAVES OF ABSENCE

| | | | | |
|---|---|---|---|---|
| 601 | Medical Leave | 12/1/1999 | 1/1/2006 | 66 |

47



**WRPS, LP**

| | | | | |
|---|---|---|---|---|
| 602 | Family Leave | 12/1/1999 | 1/1/2006 | 68 |
| 605 | Military Leave | 1/1/2006 | 1/1/2000 | 70 |

EMPLOYEE CONDUCT & DISCIPLINARY ACTION

| | | | | |
|---|---|---|---|---|
| 701 | Employee Conduct and Work Rules | 12/1/1999 | 1/1/2006 | 71 |
| 702 | Drug and Alcohol Use | 12/1/1999 | 1/1/2000 | 73 |
| 703 | Sexual and Other Unlawful Harassment | 12/1/1999 | 1/1/2006 | 74 |
| 704 | Attendance and Punctuality | 12/1/1999 | 1/1/2000 | 76 |
| 705 | Personal Appearance | 12/1/1999 | 1/1/2000 | 77 |
| 706 | Return of Property | 12/1/1999 | 1/1/2000 | 78 |
| 708 | Resignation | 12/1/1999 | 1/1/2000 | 79 |
| 714 | Drug Testing | 12/1/1999 | 1/1/2006 | 80 |
| 716 | Progressive Discipline | 12/1/1999 | 1/1/2006 | 81 |
| 718 | Problem Resolution | 12/1/1999 | 1/1/2006 | 83 |
| 720 | Casual Days | 12/1/1999 | 1/1/2006 | 85 |

MISCELLANEOUS

| | | | | |
|---|---|---|---|---|
| 800 | Life-Threatening Illnesses in the Workplace | 12/1/1999 | 1/1/2006 | 87 |
| 806 | Suggestion Program | 12/1/1999 | 1/1/2006 | 88 |

App.008



# WRPS, LP
## WRPS, LP

Welcome new employee!

On behalf of your colleagues, I welcome you to WRPS, LP and wish you every success here.

We believe that each employee contributes directly to WRPS, LP's growth and success, and we hope you will take pride in being a member of our team.

This handbook was developed to describe some of the expectations of our employees and to outline the policies, programs, and benefits available to eligible employees. Employees should familiarize themselves with the contents of the employee handbook as soon as possible, for it will answer many questions about employment with WRPS, LP.

We hope that your experience here will be challenging, enjoyable, and rewarding. Again, welcome!

Sincerely,


Marcus D. Hiles
Chairman and CEO

1

App.009



# *WRPS, LP*
**WRPS, LP**

ORGANIZATION DESCRIPTION

Western Rim Property Services currently manages over 6,000 apartment homes in Texas. These apartment homes include luxury, moderate, and affordable housing communities. Currently Western Rim has in excess of 1,200 LIHTC apartments with its major growth emphasis consisting of luxury AAA properties. Whatever your needs, Western Rim has a home to satisfy your requirements.

The Mansion trademark is the brand name for its AAA luxury units. These properties are unmatched in their amenities such as attached garages, marble baths with Jacuzzi tubs, granite kitchens, Berber carpet, and upgraded kitchen appliances. The most spectacular clubhouses in the industry, which include full impact aerobics floors, free weight and exercise room, stadium seating theater rooms, pool tables, tanning beds, saunas and an outside pool area that is beyond belief. Our philosophy is not that we are renting living space but are instead marketing a life style.

. . . . . . . . . .

Western Rim Properties are on the cutting edge of design. Many are regularly referenced in the industry publications and are finalist for national awards such as the 1998 National Award "Pillars of the Industry" for best signage (Mansions by Vineyard) and 1999 National Apartment Association's "Pillars of the Industry" for best brochure (Mansions by the Lake).

2

App.010



# *WRPS, LP*
## WRPS, LP

### INTRODUCTORY STATEMENT

This handbook is designed to acquaint you with WRPS, LP and provide you with information about working conditions, employee benefits, and some of the policies affecting your employment. You should read, understand, and comply with all provisions of the handbook. It describes many of your responsibilities as an employee and outlines the programs developed by WRPS, LP to benefit employees. One of our objectives is to provide a work environment that is conducive to both personal and professional growth.

No employee handbook can anticipate every circumstance or question about policy. As WRPS, LP continues to grow, the need may arise and WRPS, LP reserves the right to revise, supplement, or rescind any policies or portion of the handbook from time to time as it deems appropriate, in its sole and absolute discretion. The only exception to any changes is our employment-at-will policy permitting you or WRPS, LP to end our relationship for any reason at any time. Employees will, of course, be notified of such changes to the handbook as they occur.

3

App.011



# *WRPS, LP*
**WRPS, LP**

## 718 Problem Resolution
Effective Date: 12/1/1999
Revision Date: 8/1/2006

WRPS, LP is committed to providing the best possible working conditions for its employees. Part of this commitment is encouraging an open and frank atmosphere in which any problem, complaint, suggestion, or question receives a timely response from WRPS, LP supervisors and management.

WRPS, LP strives to ensure fair and honest treatment of all employees. Supervisors, managers, and employees are expected to treat each other with mutual respect. Employees are encouraged to offer positive and constructive criticism.

If employees disagree with established rules of conduct, policies, or practices, they can express their concern through the problem resolution procedure. No employee will be penalized, formally or informally, for voicing a complaint with WRPS, LP in a reasonable, business-like manner, or for using the problem resolution procedure.

If a situation occurs when employees believe that a condition of employment or a decision affecting them is unjust or inequitable, they are encouraged to make use of the following steps. The employee may discontinue the procedure at any step.

1. Employee presents problem promptly to immediate supervisor within 3 calendar days, after incident occurs. If supervisor is unavailable or employee believes it would be inappropriate to contact that person, employee may present problem to the Human Resources Department or any other member of management.

2. Supervisor responds to problem during discussion or within 3 calendar days, after consulting with appropriate management, when necessary. Supervisor documents discussion.

3. Employee presents problem to the Human Resources Department within 3 calendar days, if problem is unresolved.

4. Human Resources Department counsels and advises employee, assists in putting problem in writing, visits with employee's manager(s), if necessary, and directs employee to the President for review of problem.

5. Employee presents problem to the President in writing.

83

App.012



# *WRPS, LP*
## WRPS, LP

6. The President reviews and considers problem. The President informs employee of decision within 3 calendar days, and forwards copy of written response to the Human Resources Department for employee's file. The President has full authority to make any adjustment deemed appropriate to resolve the problem. This decision is final and binding on all parties and may not be discussed or complained about again.

Problems, disputes, or claims not resolved through the preceding problem resolution steps are subject to final and binding arbitration. The arbitration proceeding will be conducted under the Employment Dispute Resolution Rules of the American Arbitration Association. The decision or award of the Arbitrator made under these rules is exclusive, final, and binding on parties, their beneficiaries, executors, administrators, successors, and assigns. <u>Every</u> employee must sign the attached Arbitration Agreement. This is an absolute requirement.

Employees who choose to use the arbitration process to resolve a problem will be expected to share the cost of the arbitration proceeding with WRPS, LP. A complete description of the arbitration procedure is available from the Human Resources Department for review.

Not every problem can be resolved to everyone's total satisfaction, but only through understanding and discussion of mutual problems can employees and management develop confidence in each other. This confidence is important to the operation of an efficient and harmonious work environment, and helps to ensure everyone's job security.

84

53

App.013

# EXHIBIT E



# Employment
## Arbitration Rules & Mediation Procedures



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/employment**

Rules Amended and Effective November 1, 2009
Fee Schedule Amended and Effective May 15, 2013

## Regional Vice Presidents and Directors

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, West Virginia**
Kenneth Egger
Vice President
Phone: 215.731.2281
Email: EggerK@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, New York, Vermont**
Ann Lesser, Esq.
Vice President
Phone: 212.484.4084
Email: LesserA@adr.org

**States: Alabama, Arkansas, Florida, Georgia, Mississippi, North Carolina, South Carolina, Virginia**
Charles Dorsey
Director
Phone: 866.686.6024
Email: DorseyC@adr.org

**States: Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Tennessee, Wisconsin**
Jan Holdinski
Vice President
Phone: 248.352.5509
Email: HoldinskiJ@adr.org

**States: Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington, Wyoming**
John English
Vice President
Phone: 619.239.3051
Email: EnglishJ@adr.org

**States: Rhode Island**
Heather Santo
Director
Phone: 866.293.4053
Email: SantoH@adr.org

**States: Louisiana, New Mexico, Oklahoma, Texas**
Molly Bargenquest
Vice President
Phone: 972.702.8222
Email: BargenquestM@adr.org

## Case Management Vice Presidents and Directors

Molly Bargenquest
Vice President
Phone: 972.702.8222
Email: BargenquestM@adr.org
**Administers cases in AR, IL, IA, KS, LA, MN, MS, MO, NE, ND, OK, SD, TX, WI**

Patrick Tatum
Director
Phone: 559.490.1905
Email: TatumP@adr.org
**Administers cases in AK, AZ, CA, CO, HI, ID, MT, NV, NM, OR, UT, WA, WY**

Charles Dorsey
Director
Phone: 866.686.6024
Email: DorseyC@adr.org
**Administers cases in FL, GA**

Heather Santo
Director
Phone: 866.293.4053
Email: SantoH@adr.org
**Administers cases in AL, CT, DC, DE, IN, KY, MA, MD, ME, MI, NC, NH, NJ, NY, OH, PA, RI, SC, TN, VA, VT, WV**

# Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Role of the American Arbitration Association® . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Legal Basis of Employment ADR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

The Fairness Issue: The Due Process Protocol . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

AAA's Employment ADR Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

AAA's Policy on Employment ADR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Notification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Costs of Employment Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Designing an ADR Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Alternative Dispute Resolution Options . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Open Door Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Ombuds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Peer Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Internal Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Fact-Finding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Types of Disputes Covered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Employment Arbitration Rules and Mediation Procedures . . . . . . . . . . . . . . . . . . 15

    1. Applicable Rules of Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    2. Notification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    3. AAA as Administrator of the Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    4. Initiation of Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    5. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    6. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    7. Administrative and Mediation Conferences . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    8. Arbitration Management Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    9. Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    10. Fixing of Locale (the city, county, state, territory, and/or country of the Arbitration) 19

    11. Date, Time and Place (the physical site of the hearing within the designated locale)
       of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    12. Number, Qualifications and Appointment of Neutral Arbitrators . . . . . . . . . . . . . 20

    13. Party Appointed Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties. . . . . . . . . 21

15. Disclosure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

16. Disqualification of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

17. Communication with Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

19. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

20. Stenographic Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

21. Interpreters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

22. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

23. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

24. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

25. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

26. Majority Decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

27. Dispositive Motions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28. Order of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

29. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . . . 25

30. Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

31. Inspection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

32. Interim Measures. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

33. Closing of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

34. Reopening of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

35. Waiver of Oral Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

36. Waiver of Objection/Lack of Compliance with These Rules . . . . . . . . . . . . . . . . . . 28

37. Extensions of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

38. Serving of Notice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

39. The Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

40. Modification of Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

41. Release of Documents for Judicial Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

42. Applications to Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

43. Administrative Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

44. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

45. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

46. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

47. Suspension for Non-Payment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

48. Interpretation and Application of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Costs of Arbitration (including AAA Administrative Fees). . . . . . . . . . . . . . . . . . . . . . . . 31

## For Disputes Arising Out of Employer-Promulgated Plans\*: ................... 32

(i) Filing Fees ........................................................... 32

(ii) Hearing Fees ......................................................... 33

(iii) Postponement/Cancellation Fees ...................................... 34

(iv) Hearing Room Rental .................................................. 34

(v) Abeyance Fee ......................................................... 34

(vi) Expenses ............................................................ 34

## For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts: ............................................................... 34

## Administrative Fee Schedules (Standard and Flexible Fees) ................... 35

(i) Standard Fee Schedule ................................................. 36

(ii) Refund Schedule for Standard Fee Schedule ............................ 38

(iii) Flexible Fee Schedule ............................................... 39

(iv) Hearing Room Rental .................................................. 41

(v) Abeyance Fee ......................................................... 41

(vi) Expenses ............................................................ 41

## For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules"): ....................................... 42

## Optional Rules for Emergency Measures of Protection ....................... 42

O-1. Applicability ........................................................ 42

O-2. Appointment of Emergency Arbitrator .................................. 42

O-3. Schedule ............................................................ 42

O-4. Interim Award ....................................................... 43

O-5. Constitution of the Panel ........................................... 43

O-6. Security ............................................................ 43

O-7. Special Master ...................................................... 43

O-8. Costs ............................................................... 43

# Employment Mediation Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

M-1. Agreement of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

M-2. Initiation of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

M-3. Fixing of Locale (the city, county, state, territory and, if applicable, country of
the mediation) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

M-4. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

M-5. Appointment of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

M-6. Mediator's Impartiality and Duty to Disclose . . . . . . . . . . . . . . . . . . . . . . . . . . 46

M-7. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

M-8. Duties and Responsibilities of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . 46

M-9. Responsibilities of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

M-10. Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

M-11. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

M-12. No Stenographic Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

M-13. Termination of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

M-14. Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

M-15. Interpretation and Application of Procedures . . . . . . . . . . . . . . . . . . . . . . . . . 49

M-16. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

M-17. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

M-18. Cost of the Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

# Employment Arbitration
## Rules and Mediation Procedures



## Introduction

Federal and state laws reflecting societal intolerance for certain workplace conduct, as well as court decisions interpreting and applying those statutes, have redefined responsible corporate practice and employee relations. Increasingly, employers and employees face workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color, religion, sex, national origin, age and disability.

As courts and administrative agencies become less accessible to civil litigants, employers and their employees now see alternative dispute resolution ("ADR") as a way to promptly and effectively resolve workplace disputes. ADR procedures are becoming more common in contracts of employment, personnel manuals, and employee handbooks.

Increasingly, corporations and their employees look to the American Arbitration Association® as a resource in developing prompt and effective employment procedures for employment-related disputes.

These Rules have been developed for employers and employees who wish to use a private alternative to resolve their disputes, enabling them to have complaints heard by an impartial person with expertise in the employment field. These procedures benefit both the employer and the individual employee by making it possible to resolve disputes without extensive litigation.

## Role of the American Arbitration Association

The American Arbitration Association, founded in 1926, is a not-for-profit, public service organization dedicated to the resolution of disputes through mediation, arbitration, elections and other voluntary dispute resolution procedures. Millions of workers are now covered by employment ADR plans administered by the AAA®.

In addition, the AAA provides education and training, specialized publications, and research on all forms of dispute settlement. With 30 offices worldwide and cooperative agreements with arbitral institutions in 63 other nations, the American Arbitration Association is the nation's largest private provider of ADR services.

For over 80 years, the American Arbitration Association has set the standards for the development of fair and equitable dispute resolution procedures. The development of the *Employment Arbitration Rules and Mediation Procedures* and the reconstitution of a select and diverse roster of expert neutrals to hear and resolve disputes, are the most recent initiatives of the Association to provide private, efficient, and cost-effective procedures for out-of-court settlement of workplace disputes.

## Legal Basis of Employment ADR

Since 1990, Congress has twice re-affirmed the important role of ADR in the area of employment discrimination — in the Americans with Disabilities Act in 1990, and a year later in Section 118 of the Civil Rights Act of 1991.

The United States Supreme Court has also spoken on the importance of ADR in the employment context. In *Gilmer v. Interstate/Johnson Lane*, 500 U.S. 20, 111 S.Ct. 1647 (1991), the Supreme Court refused to invalidate Gilmer's agreement with the New York Stock Exchange that he would arbitrate disputes with his employer (Interstate/Johnson Lane) simply because he was obliged to sign it in order to work as a securities dealer whose trades were executed on the Exchange. Although the *Gilmer* Court found that the Age Discrimination in Employment Act did not preclude arbitration of age discrimination claims, it specifically declined to decide whether employment arbitration agreements were "contracts of employment" excluded under the Federal Arbitration Act.

The specific issue left open by *Gilmer* was decided 10 years later by the United States Supreme Court in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001). In Circuit City, the Supreme Court concluded that except for transportation workers such as seamen or railroad workers, the FAA covers all contracts of employment and that the Act may be used to compel arbitration of employment-related claims. While Circuit City involved only state law claims, the Supreme Court had determined previously in Gilmer that federal age discrimination claims (and presumably other federal civil rights claims) were arbitrable under the FAA.

## The Fairness Issue: The Due Process Protocol

*The Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship* was developed in 1995 by a special task force composed of individuals representing management, labor, employment, civil rights organizations, private administrative agencies, government, and the American Arbitration Association. The *Due Process Protocol*, which was endorsed by the Association in 1995, seeks to ensure fairness and equity in resolving workplace disputes. The *Due Process Protocol* encourages mediation and arbitration of statutory disputes, provided there are due process safeguards. It conveys the hope that ADR will reduce delays caused by the huge backlog of cases pending before administrative agencies and the courts. The *Due Process Protocol* "recognizes the dilemma inherent in the timing of an agreement to mediate and/or arbitrate statutory disputes" but does not take a position on whether an employer can require a pre-dispute, binding arbitration program as a condition of employment.

The *Due Process Protocol* has been endorsed by organizations representing a broad range of constituencies. They include the American Arbitration Association, the American Bar Association Labor and Employment Section, the American Civil Liberties Union, the Federal Mediation and Conciliation Service, the National Academy of Arbitrators, and the National Society of Professionals in Dispute Resolution. The National Employment Lawyers Association has endorsed the substantive provisions of the *Due Process Protocol*.

It has been incorporated into the *Report of the United States Secretary of Labor's Task Force in Excellence in State and Local Government* and cited with approval in numerous court opinions.

## AAA's Employment ADR Rules

On June 1, 1996, the Association issued *National Rules for the Resolution of Employment Disputes* (now known as the *Employment Arbitration Rules and Mediation Procedures*). The rules reflected the guidelines outlined in the *Due Process Protocol* and were based upon the AAA's *California Employment Dispute Resolution Rules*, which were developed by a committee of employment management and plaintiff attorneys, retired judges and arbitrators, in addition to Association executives. The revised rules were developed for employers and employees who wish to use a private alternative to resolve their disputes. The rules enabled parties to have complaints heard by an impartial person of

their joint selection, with expertise in the employment field. Both employers and individual employees benefit by having experts resolve their disputes without the costs and delay of litigation. The rules included procedures which ensure due process in both the mediation and arbitration of employment disputes. After a year of use, the rules were amended to address technical issues.

## AAA's Policy on Employment ADR

The AAA's policy on employment ADR is guided by the state of existing law, as well as its obligation to act in an impartial manner. In following the law, and in the interest of providing an appropriate forum for the resolution of employment disputes, the Association administers dispute resolution programs which meet the due process standards as outlined in its *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol*. If the Association determines that a dispute resolution program on its face substantially and materially deviates from the minimum due process standards of the *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol*, the Association may decline to administer cases under that program. Other issues will be presented to the arbitrator for determination.

## Notification

If an employer intends to utilize the dispute resolution services of the Association in an employment ADR plan, it shall, at least 30 days prior to the planned effective date of the program: (1) notify the Association of its intention to do so; and (2) provide the Association with a copy of the employment dispute resolution plan. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services. Copies of all plans should be sent to the American Arbitration Association, 725 South Figueroa Street, Suite 2400, Los Angeles, CA 90017; FAX: 213.622.6199.

## Costs of Employment Arbitration

These Rules contain two separate and distinct arbitration costs sections; one for disputes arising out of employer-promulgated plans and the other for disputes arising out of individually-negotiated employment agreements and contracts. When the arbitration is filed, the AAA makes an initial administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract. This

determination is made by reviewing the documentation provided to the AAA by the parties, including, but not limited to, the demand for arbitration, the parties' arbitration program or agreement, and any employment agreements or contracts between the parties.

When making its determination on the applicable costs of arbitration section in a given arbitration, the AAA's review is focused on two primary issues. The first component of the review focuses on whether the arbitration program and/or agreement between the individual employee and the employer is one in which it appears that the employer has drafted a standardized arbitration clause with its employees. The second aspect of the review focuses on the ability of the parties to negotiate the terms and conditions of the parties' agreement.

If a party disagrees with the AAA's initial determination, the parties may bring the issue to the attention of the arbitrator for a final determination.

## Designing an ADR Program

The guiding principle in designing a successful employment ADR system is that it must be fair in fact and perception. The American Arbitration Association has considerable experience in administering and assisting in the design of employment ADR plans, which gives it an informed perspective on how to effectively design ADR systems, as well as the problems to avoid. Its guidance to those designing employment ADR systems is summarized as follows:

» The American Arbitration Association encourages employers to consider the wide range of legally-available options to resolve workplace disputes outside the courtroom.

» A special emphasis is placed by the Association on encouraging the development of in-house dispute resolution procedures, such as open door policies, ombuds, peer review and internal mediation.

» The Association recommends an external mediation component to resolve disputes not settled by the internal dispute resolution process.

» Programs which use arbitration as a final step may employ:

- pre-dispute, voluntary final and binding arbitration;

- pre-dispute, mandatory nonbinding arbitration;

- pre-dispute, mandatory final and binding arbitration; or

- post-dispute, voluntary final and binding arbitration.

» Although the AAA administers binding arbitration systems that have been required as a condition of initial or continued employment, such programs must be consistent with the Association's *Employment Arbitration Rules and Mediation Procedures*.

Specific guidance on the responsible development and design of employment ADR systems is contained in the Association's publication, *Resolving Employment Disputes: A Practical Guide*, which is available from the AAA's website, **www.adr.org.**

# Alternative Dispute Resolution Options

## Open Door Policy

Employees are encouraged to meet with their immediate manager or supervisor to discuss problems arising out of the workplace environment. In some systems, the employee is free to approach anyone in the chain of command.

## Ombuds

A neutral third party (either from within or outside the company) is designated to confidentially investigate and propose settlement of employment complaints brought by employees.

## Peer Review

A panel of employees (or employees and managers) works together to resolve employment complaints. Peer review panel members are trained in the handling of sensitive issues.

## Internal Mediation

A process for resolving disputes in which a neutral third person from within the company, trained in mediation techniques, helps the disputing parties negotiate a mutually acceptable settlement. Mediation is a nonbinding process in which the parties discuss their disputes with an impartial person who assists them in reaching a settlement. The mediator may suggest ways of resolving the dispute but may not impose a settlement on the parties.

## Fact-Finding

The investigation of a complaint by an impartial third person (or team) who examines the complaint and the facts and issues a nonbinding report. Fact-finding is particularly helpful for allegations of sexual harassment, where a fact-finding team, composed of one male and one female neutral, investigates the allegations and presents its findings to the employer and the employee.

Rules Amended and Effective November 1, 2009. Fee Schedule Amended and Effective May 15, 2013.     EMPLOYMENT RULES   13 **13**

App.026

## Arbitration

Arbitration is generally defined as the submission of disputes to one or more impartial persons for final and binding determination. It can be the final step in a workplace program that includes other dispute resolution methods. There are many possibilities for designing this final step.

They include:

» **Pre-Dispute, Voluntary Final and Binding Arbitration**
The parties agree in advance, on a voluntary basis, to use arbitration to resolve disputes and they are bound by the outcome.

» **Pre-Dispute, Mandatory Nonbinding Arbitration**
The parties must use the arbitration process to resolve disputes, but they are not bound by the outcome.

» **Pre-Dispute, Mandatory Final and Binding Arbitration**
The parties must arbitrate unresolved disputes and they are bound by the outcome.

» **Post-Dispute, Voluntary Final and Binding Arbitration**
The parties have the option of deciding whether to use final and binding arbitration after a dispute arises.

## Types of Disputes Covered

The dispute resolution procedures contained in this booklet were developed for arbitration agreements contained in employee personnel manuals, an employment application of an individual employment agreement, other types of employment agreements, or can be used for a specific dispute. They do not apply to disputes arising out of collective bargaining agreements or independent contractor agreements.

# Employment Arbitration Rules and Mediation Procedures

## 1. Applicable Rules of Arbitration

The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its *Employment Arbitration Rules and Mediation Procedures* or for arbitration by the AAA of an employment dispute without specifying particular rules*. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.

If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the party to obtain a stay of arbitration from the court.These rules, and any amendment of them, shall apply in the form in effect at the time the demand for arbitration or submission is received by the AAA.

*\* The National Rules for the Resolution of Employment Disputes have been re-named the Employment Arbitration Rules and Mediation Procedures. Any arbitration agreements providing for arbitration under its National Rules for the Resolution of Employment Disputes shall be administered pursuant to these Employment Arbitration Rules and Mediation Procedures.*

## 2. Notification

An employer intending to incorporate these rules or to refer to the dispute resolution services of the AAA in an employment ADR plan, shall, at least 30 days prior to the planned effective date of the program:

**a.** notify the Association of its intention to do so and,

**b.** provide the Association with a copy of the employment dispute resolution plan.

Compliance with this requirement shall not preclude an arbitrator from entertaining challenges as provided in Section 1. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

## 3. AAA as Administrator of the Arbitration

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

## 4. Initiation of Arbitration

Arbitration shall be initiated in the following manner.

**a.** The parties may submit a joint request for arbitration.

**b.** In the absence of a joint request for arbitration:

**(i)** The initiating party (hereinafter "Claimant[s]") shall:

**(1)** File a written notice (hereinafter "Demand") of its intention to arbitrate at any office of the AAA, within the time limit established by the applicable statute of limitations. Any dispute over the timeliness of the demand shall be referred to the arbitrator. The filing shall be made in duplicate, and each copy shall include the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location.

**(2)** Simultaneously provide a copy of the Demand to the other party (hereinafter "Respondent[s]").

**(3)** Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.

**(ii)** The Respondent(s) may file an Answer with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The Answer shall provide the Respondent's brief response to the claim and the issues presented. The Respondent(s) shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Claimant. If no answering statement is filed within the stated time, Respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

**(iii)** The Respondent(s):

**(1)** May file a counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The filing shall be made in duplicate. The counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought.

(2) Simultaneously shall send a copy of any counterclaim to the Claimant.

(3) Shall include with its filing the applicable filing fee provided for by these rules.

(iv) The Claimant may file an Answer to the counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the counterclaim. The Answer shall provide Claimant's brief response to the counterclaim and the issues presented. The Claimant shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Respondent(s). If no answering statement is filed within the stated time, Claimant will be deemed to deny the counterclaim. Failure to file an answering statement shall not operate to delay the arbitration.

c. The form of any filing in these rules shall not be subject to technical pleading requirements.

## 5. Changes of Claim

Before the appointment of the arbitrator, if either party desires to offer a new or different claim or counterclaim, such party must do so in writing by filing a written statement with the AAA and simultaneously provide a copy to the other party(s), who shall have 15 days from the date of such transmittal within which to file an answer with the AAA. After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator.

## 6. Jurisdiction

a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

c. A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## 7. Administrative and Mediation Conferences

Before the appointment of the arbitrator, any party may request, or the AAA, in its discretion, may schedule an administrative conference with a representative of the AAA and the parties and/or their representatives. The purpose of the

administrative conference is to organize and expedite the arbitration, explore its administrative aspects, establish the most efficient means of selecting an arbitrator, and to consider mediation as a dispute resolution option. There is no administrative fee for this service.

At any time after the filing of the Demand, with the consent of the parties, the AAA will arrange a mediation conference under its Mediation Procedures to facilitate settlement. The mediator shall not be any arbitrator appointed to the case, except by mutual written agreement of the parties. There is no additional filing fee for initiating a mediation under the AAA Mediation Procedures for parties to a pending arbitration.

## 8. Arbitration Management Conference

As promptly as practicable after the selection of the arbitrator(s), but not later than 60 days thereafter, an arbitration management conference shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the Arbitration Management Conference will be conducted by telephone conference call rather than in person. At the Arbitration Management Conference the matters to be considered shall include, without limitation:

**a.** the issues to be arbitrated;

**b.** the date, time, place, and estimated duration of the hearing;

**c.** the resolution of outstanding discovery issues and establishment of discovery parameters;

**d.** the law, standards, rules of evidence and burdens of proof that are to apply to the proceeding;

**e.** the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues;

**f.** the names of witnesses (including expert witnesses), the scope of witness testimony, and witness exclusion;

**g.** the value of bifurcating the arbitration into a liability phase and damages phase;

**h.** the need for a stenographic record;

**i.** whether the parties will summarize their arguments orally or in writing;

**j.** the form of the award;

**k.** any other issues relating to the subject or conduct of the arbitration;

**l.** the allocation of attorney's fees and costs;

**m.** the specification of undisclosed claims;

**n.** the extent to which documentary evidence may be submitted at the hearing;

**o.** the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by any other means;

**p.** any disputes over the AAA's determination regarding whether the dispute arose from an individually-negotiated employment agreement or contract, or from an employer-promulgated plan (see Costs of Arbitration section).

The arbitrator shall issue oral or written orders reflecting his or her decision on the above matters and may conduct additional conferences when the need arises.

There is no AAA administrative fee for an Arbitration Management Conference.

## 9. Discovery

The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

The AAA does not require notice of discovery related matters and communications unless a dispute arises. At that time, the parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

## 10. Fixing of Locale (the city, county, state, territory, and/or country of the Arbitration)

If the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator(s), after their appointment to make a final determination on the locale. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

## 11. Date, Time and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

## 12. Number, Qualifications and Appointment of Neutral Arbitrators

**a.** If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator.

**b.** Qualifications

  **i.** Neutral arbitrators serving under these rules shall be experienced in the field of employment law.

  **ii.** Neutral arbitrators serving under these rules shall have no personal or financial interest in the results of the proceeding in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias.

  **iii.** The roster of available arbitrators will be established on a non-discriminatory basis, diverse by gender, ethnicity, background, and qualifications.

  **iv.** The AAA may, upon request of a party within the time set to return their list or upon its own initiative, supplement the list of proposed arbitrators in disputes arising out of individually-negotiated employment contracts with persons from the Commercial Roster, to allow the AAA to respond to the particular need of the dispute. In multi-arbitrator disputes, at least one of the arbitrators shall be experienced in the field of employment law.

**c.** If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:

  **i.** Shortly after it receives the Demand, the AAA shall send simultaneously to each party a letter containing an identical list of names of persons chosen from the Employment Dispute Resolution Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

  **ii.** If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.

  **iii.** From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

## 13. Party Appointed Arbitrators

**a.** If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed.

**b.** Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-16 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-16(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards. The notice of appointment, with the name, address, and contact information of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of membersof the National Roster from which the party may, if it so desires, make the appointment.

**c.** If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

**d.** If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

## 14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

**a.** If, pursuant to Section R-13, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.

**b.** If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

**c.** If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-12, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

## 15. Disclosure

**a.** Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.

**b.** Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

**c.** In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-15 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

## 16. Disqualification of Arbitrator

**a.** Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:

   **i.** partiality or lack of independence,

   **ii.** inability or refusal to perform his or her duties with diligence and in good faith, and

   **iii.** any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

**b.** Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

## 17. Communication with Arbitrator

**a.** No party and no one acting on behalf of any party shall communicate *ex parte* with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate *ex parte* with a candidate for direct appointment pursuant to Section R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

**b.** Section R-17(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-16(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-16(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-17(a) should nonetheless apply prospectively.

## 18. Vacancies

If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with applicable provisions of these Rules.

In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## 19. Representation

Any party may be represented by counsel or other authorized representatives. For parties without representation, the AAA will, upon request, provide reference to institutions which might offer assistance. A party who intends to be represented shall notify the other party and the AAA of the name and address of the representative at least 10 days prior to the date set for the hearing or conference at which that person is first to appear. If a representative files a Demand or an Answer, the obligation to give notice of representative status is deemed satisfied.

## 20. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcriptis agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

## 21. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

## 22. Attendance at Hearings

The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator also shall have the authority to decide whether any person who is not a witness may attend the hearing.

## 23. Confidentiality

The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

## 24. Postponements

The arbitrator: (1) may postpone any hearing upon the request of a party for good cause shown; (2) must postpone any hearing upon the mutual agreement of the parties; and (3) may postpone any hearing on his or her own initiative.

## 25. Oaths

Before proceeding with the first hearing, each arbitrator shall take an oath of office. The oath shall be provided to the parties prior to the first hearing. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

## 26. Majority Decision

All decisions and awards of the arbitrators must be by a majority, unless the unanimous decision of all arbitrators is expressly required by the arbitration agreement or by law.

## 27. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

## 28. Order of Proceedings

A hearing may be opened by: (1) recording the date, time, and place of the hearing; (2) recording the presence of the arbitrator, the parties, and their

representatives, if any; and (3) receiving into the record the Demand and the Answer, if any. The arbitrator may, at the beginning of the hearing, ask for statements clarifying the issues involved.

The parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court.

Witnesses for each party shall submit to direct and cross examination.

With the exception of the rules regarding the allocation of the burdens of proof and going forward with the evidence, the arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute. When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including web conferencing, internet communication, telephonic conferences and means other than an in-person presentation of evidence. Such alternative means must still afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and when involving witnesses, provide that such witness submit to direct and cross-examination.

The arbitrator, in exercising his or her discretion, shall conduct the proceedings with a view toward expediting the resolution of the dispute, may direct the order of proof, bifurcate proceedings, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

Documentary and other forms of physical evidence, when offered by either party, may be received in evidence by the arbitrator.

The names and addresses of all witnesses and a description of the exhibits in the order received shall be made a part of the record.

## 29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be based solely on the default of a party. The arbitrator shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of the award.

## 30. Evidence

The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party or arbitrator is absent, in default, or has waived the right to be present, however "presence" should not be construed to mandate that the parties and arbitrators must be physically present in the same location.

An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary. The arbitrator may in his or her discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party is absent, in default, or has waived the right to be present.

If the parties agree or the arbitrator directs that documents or other evidence may be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator, unless the parties agree to a different method of distribution. All parties shall be afforded an opportunity to examine such documents or other evidence and to lodge appropriate objections, if any.

## 31. Inspection

Upon the request of a party, the arbitrator may make an inspection in connection with the arbitration. The arbitrator shall set the date and time, and the AAA shall notify the parties. In the event that one or all parties are not present during the inspection, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

## 32. Interim Measures

At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, as stated in Rule 39(d), Award.

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

## 33. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Rule 30 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing. The time limit within which the arbitrator is required to make the award shall commence to run, in the absence of other agreements by the parties, upon closing of the hearing.

## 34. Reopening of Hearing

The hearing may be reopened by the arbitrator upon the arbitrator's initiative, or upon application of a party for good cause shown, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

## 35. Waiver of Oral Hearing

The parties may provide, by written agreement, for the waiver of oral hearings. If the parties are unable to agree as to the procedure, upon the appointment of the arbitrator, the arbitrator shall specify a fair and equitable procedure.

## 36. Waiver of Objection/Lack of Compliance with These Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object.

## 37. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

## 38. Serving of Notice

a. Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

b. The AAA, the arbitrator, and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (e-mail), or other methods of communication.

c. Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

## 39. The Award

a. The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator. Three additional days are provided if briefs are to be filed or other documents are to be transmitted pursuant to Rule 30.

b. An award issued under these rules shall be publicly available, on a cost basis. The names of the parties and witnesses will not be publicly available, unless a party expressly agrees to have its name made public in the award.

c. The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

**d.** The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party and, in the event any administrative fees or expenses are due the AAA, in favor of the AAA, subject to the provisions contained in the Costs of Arbitration section.

**e.** If the parties settle their dispute during the course of the arbitration and mutually request, the arbitrator may set forth the terms of the settlement in a consent award.

**f.** The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail, addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any manner that may be required by law.

**g.** The arbitrator's award shall be final and binding.

## 40. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

## 41. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at that party's expense, certified copies of any papers in the AAA's case file that may be required in judicial proceedings relating to the arbitration.

## 42. Applications to Court

**a.** No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

**b.** Neither the AAA nor any arbitrator in a proceeding under these rules is or shall be considered a necessary or proper party in judicial proceedings relating to the arbitration.

**c.** Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction.

d. Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

## 43. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

AAA fees shall be paid in accordance with the Costs of Arbitration Section (see page 33-43).

The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. (To ensure that you have the most current information, see our website at **www.adr.org**).

## 44. Neutral Arbitrator's Compensation

Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and moneys collected by the AAA for this purpose.

Arbitrator compensation shall be borne in accordance with the Costs of Arbitration section.

## 45. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator shall be borne in accordance with the Costs of Arbitration section.

## 46. Deposits

The AAA may require deposits in advance of any hearings such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee, if any, and shall render an accounting and return any unexpended balance at the conclusion of the case.

## 47. Suspension for Non-Payment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings.

## 48. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be resolved by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other procedures shall be interpreted and applied by the AAA.

## Costs of Arbitration (including AAA Administrative Fees)

This Costs of Arbitration section contains two separate and distinct sub-sections. Initially, the AAA shall make an administrative determination as to whether the dispute arises from an employer-promulgated plan or an individually-negotiated employment agreement or contract.

If a party disagrees with the AAA's determination, the parties may bring the issue to the attention of the arbitrator for a final determination. The arbitrator's determination will be made on documents only, unless the arbitrator deems a hearing is necessary.

# For Disputes Arising Out of Employer-Promulgated Plans[*]:

Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. The employer shall pay the arbitrator's compensation unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation, expenses as defined in section (iv) below, and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

[*] *Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact Case Filing Services at 877-495-4185 if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003.)*

A party making a demand for treatment of a claim, counterclaim, or additional claim as a collective action arbitration will be subject to the administrative fees as outlined in the standard and flexible fee schedules below. Arbitrator compensation is not included as a part of the administrative fees charged by the AAA. Arbitrator compensation in cases involving a collective action claim will be charged in accordance with the determination as to whether the dispute arises from an employer-promulgated plan or an individually negotiated employment agreement or contract.

## (i) Filing Fees

### Cases Filed by Employee Against Employer

In cases before a single arbitrator, a non-refundable filing fee capped in the amount of $200 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A non-refundable fee in the amount of $1350 is payable in full by the employer, unless the plan provides that the employer pay more.

In cases before three or more arbitrators, a non-refundable filing fee capped in the amount of $200 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A non-refundable fee in the amount of $1,800 is payable in full by the employer, unless the plan provides that the employer pay more.

The employer's share is due as soon as the employee meets his or her filing requirements, even if the matter settles.

There shall be no filing fee charged for a counterclaim. If a determination is made that the dispute arises out of an individually-negotiated employment agreement, the filing fee for a counterclaim will be charged in accordance with the fee schedules below for disputes arising out of individually negotiated employment agreements.

The above fee schedule will also apply where the employer files on behalf of the employee pursuant to the terms of the employer promulgated plan.

**Cases Filed by Employer Against Employee**

In cases before a single arbitrator, a non-refundable fee in the amount of $1,550 is payable in full by the employer.

In cases before three or more arbitrators, a non-refundable fee in the amount of $2,000 is payable in full by the employer.

There shall be no filing fee charged for a counterclaim. If a determination is made that the dispute arises out of an individually-negotiated employment agreement, the filing fee for a counterclaim will be charged in accordance with the fee schedules below for disputes arising out of individually-negotiated employment agreements.

(ii) Hearing Fees

For each day of hearing held before a single arbitrator, an administrative fee of $350 is payable by the employer.

For each day of hearing held before a multi-arbitrator panel, an administrative fee of $500 is payable by the employer.

There is no AAA hearing fee for the initial Arbitration Management Conference.

### (iii) Postponement/Cancellation Fees

A fee of $150 is payable by a party causing a postponement of any hearing scheduled before a single arbitrator.

A fee of $250 is payable by a party causing a postponement of any hearing scheduled before a multi-arbitrator panel.

### (iv) Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the employer.

### (v) Abeyance Fee

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. A case may only be held in abeyance after the initial filing fees have been paid. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

### (vi) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer.

## For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts:

The AAA's Fee Schedule, as modified below, will apply to disputes arising out of individually-negotiated employment agreements and contracts, even if such agreements and contracts reference or incorporate an employer-promulgated plan. Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment.

# Administrative Fee Schedules (Standard and Flexible Fee)

The AAA has two administrative fee options for parties filing claims or counterclaims, the Standard Fee Schedule and Flexible Fee Schedule. The Standard Fee Schedule has a two-payment schedule, and the Flexible Fee Schedule has a three-payment schedule which offers lower initial filing fees, but potentially higher total administrative fees of approximately 12% to 19% for cases that proceed to a hearing. The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

In an effort to make arbitration costs reasonable for consumers, the AAA has a separate fee schedule for consumer-related disputes. Please refer to Section C-8 of the Supplementary Procedures for Consumer-Related Disputes when filing a consumer-related claim. Note that the Flexible Fee Schedule is not available on cases administered under these supplementary procedures.

The AAA applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

**Fees for incomplete or deficient filings:** Where the applicable arbitration agreement does not reference the AAA, the AAA will attempt to obtain the agreement of the other parties to the dispute to have the arbitration administered by the AAA. However, where the AAA is unable to obtain the agreement of the parties to have the AAA administer the arbitration, the AAA will administratively close the case and will not proceed with the administration of the arbitration. In these cases, the AAA will return the filing fees to the filing party, less the amount specified in the fee schedule below for deficient filings.

Parties that file demands for arbitration that are incomplete or otherwise do not meet the filing requirements contained in these Rules shall also be charged the amount specified below for deficient filings if they fail or are unable to respond to the AAA's request to correct the deficiency.

**Fees for additional services:** The AAA reserves the right to assess additional administrative fees for services performed by the AAA beyond those provided for in these Rules which may be required by the parties' agreement or stipulation.

## (i) Standard Fee Schedule

An Initial Filing Fee is payable in full by a filing party when a claim, counterclaim, or additional claim is filed. A Final Fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the Final Fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| AMOUNT OF CLAIM | INITIAL FILING FEE | FINAL FEE |
|---|---|---|
| Above $0 to $10,000 | $775 | $200 |
| Above $10,000 to $75,000 | $975 | $300 |
| Above $75,000 to $150,000 | $1,850 | $750 |
| Above $150,000 to $300,000 | $2,800 | $1,250 |
| Above to $300,000 to $500,000 | $4,350 | $1,750 |
| Above to $500,000 to $1,000,000 | $6,200 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,200 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,200 | $4,000 |
| Above $10,000,000 | Base fee of $12,800 plus .01% of the amount above $10,000,000 Fee Capped at $65,000 | $6,000 |
| Nonmonetary claims[1] | $3,350 | $1,250 |
| Collective Action Claims[2] | $3,350 | $1,250 |
| Deficient Claim Filing Fee[3] | $350 | |
| Additional Services[4] | | |

[1] This fee is applicable when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to a filing fee of $10,200.

[2] This fee is applicable where a party makes a demand for treatment of a claim, counterclaim, or additional claim as a collective action arbitration.

[3] The Deficient Claim Filing Fee shall not be charged in cases filed by a consumer in an arbitration governed by the Supplementary Procedures for the Resolution of Consumer-Related Disputes, or in cases filed by an Employee who is submitting their dispute to arbitration pursuant to an employer promulgated plan.

[4] The AAA may assess additional fees where procedures or services outside the Rules sections are required under the parties' agreement or by stipulation.

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,800 for the Initial Filing Fee, plus a $1,250 Final Fee. Expedited Procedures are applied in any case where no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration costs.

Parties on cases filed under either the Flexible Fee Schedule or the Standard Fee Schedule that are held in abeyance for one year will be assessed an annual abeyance fee of $300. A case may only be held in abeyance after the filing fees have been paid. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

For more information, please contact your local AAA office, case management center, or our Customer Service desk at 1-800-778-7879.

## (ii) Refund Schedule for Standard Fee Schedule

The AAA offers a refund schedule on filing fees connected with the Standard Fee Schedule. For cases with claims up to $75,000, a minimum filing fee of $350 will not be refunded. For all other cases, a minimum fee of $600 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

> 100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.

> 50% of the filing fee, will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing.

> 25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing.

***No refund will be made once an arbitrator has been appointed (this includes one arbitrator or a three-arbitrator panel). No refunds will be granted on awarded cases.***

**Note:** The date of receipt of the demand for arbitration with the AAA will be used to calculate refunds of filing fees for both claims and counterclaims.

## (iii) Flexible Fee Schedule

A non-refundable Initial Filing Fee is payable in full by a filing party when a claim, counterclaim, or additional claim is filed. Upon receipt of the Demand for Arbitration, the AAA will promptly initiate the case and notify all parties as well as establish the due date for filing of an Answer, which may include a Counterclaim. In order to proceed with the further administration of the arbitration and appointment of the arbitrator(s), the appropriate, non-refundable Proceed Fee outlined below must be paid.

If a Proceed Fee is not submitted within ninety (90) days of the filing of the Claimant's Demand for Arbitration, the Association will administratively close the file and notify all parties.

***No refunds or refund schedule will apply to the Filing or Proceed Fees once received.***

The Flexible Fee Schedule below also may be utilized for the filing of counterclaims. However, as with the Claimant's claim, the counterclaim will not be presented to the arbitrator until the Proceed Fee is paid.

A Final Fee will be incurred for all claims and/or counterclaims that proceed to their first hearing. This fee will be payable in advance when the first hearing is scheduled, but will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified of a cancellation at least 24 hours before the time of the scheduled hearing, the Final Fee will remain due and will not be refunded.

All fees will be billed in accordance with the following schedule:

| AMOUNT OF CLAIM | INITIAL FILING FEE | PROCEED FEE | FINAL FEE |
|---|---|---|---|
| Above $0 to $10,000 | $400 | $475 | $200 |
| Above $10,000 to $75,000 | $625 | $500 | $300 |
| Above $75,000 to $150,000 | $850 | $1,250 | $750 |
| Above $150,000 to $300,000 | $1,000 | $2,125 | $1,250 |
| Above to $300,000 to $500,000 | $1,500 | $3,400 | $1,750 |
| Above to $500,000 to $1,000,000 | $2,500 | $4,500 | $2,500 |
| Above $1,000,000 to $5,000,000 | $2,500 | $6,700 | $3,250 |
| Above $5,000,000 to $10,000,000 | $3,500 | $8,200 | $4,000 |
| Above $10,000,000 | $4,500 | $10,300 plus .01% of claim amount over $10,000,000 up to $65,000 | $6,000 |
| Nonmonetary [1] | $2,000 | $2,000 | $1,250 |
| Collective Action Claims[2] | $2,000 | $2,000 | $1,250 |
| Deficient Claim Filing Fee | $350 | | |
| Additional Services[3] | | | |

[1] This fee is applicable when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to a filing fee of $3,500 and a proceed fee of $8,200.

[2] This fee is applicable where a party makes a demand for treatment of a claim, counterclaim, or additional claim as a collective action arbitration.

[3] The AAA reserves the right to assess additional administrative fees for services performed by the AAA beyond those provided for in these Rules and which may be required by the parties' agreement or stipulation.

For more information, please contact your local AAA office, case management center, or our Customer Service desk at 1-800-778-7879. All fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $1,000 for the Initial Filing Fee; $2,125 for the Proceed Fee; and $1,250 for the Final Fee.

Under the Flexible Fee Schedule, a party's obligation to pay the Proceed Fee shall remain in effect regardless of any agreement of the parties to stay, postpone or otherwise modify the arbitration proceedings. Parties that, through mutual agreement, have held their case in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be closed.

**Note:** The date of receipt by the AAA of the demand for arbitration will be used to calculate the ninety (90) day time limit for payment of the Proceed Fee.

There is no Refund Schedule in the Flexible Fee Schedule.

(iv) Hearing Room Rental

The fees described above do not cover the cost of hearing rooms, which are available on a rental basis. Check with the AAA for availability and rates.

(v) Abeyance Fee

Parties on cases filed under the Standard Fee Schedule that are held in abeyance for one year will be assessed an annual abeyance fee of $300. A case may only be held in abeyance after the filing fees have been paid. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

(vi) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne equally by the parties.

## For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules"):

The AAA's Administered Fee Schedule, as listed in Section 11 of the Supplementary Rules for Class Action Arbitration, shall apply to disputes proceeding under the Supplementary Rules.

## Optional Rules for Emergency Measures of Protection

### O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

### O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

### O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

## O-4. Interim Award

If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

## O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

## O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

## O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

## O-8. Costs

The costs associated with applications for emergency relief shall be apportioned in the same manner as set forth in the Costs of Arbitration section.

# Employment Mediation Procedures

## M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (AAA) or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedures, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

## M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a Request for Mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for Mediation may also be filed online via AAA WebFile at **www.adr.org.**

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

i.    A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.

ii.   The names, regular mail addresses, email addresses (if available), and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.

iii.  A brief statement of the nature of the dispute and the relief requested.

iv.   Any specific qualifications the mediator should possess.

Where there is no preexisting stipulation or contract by which the parties have provided for mediation of existing or future disputes under the auspices of the AAA, a party may request the AAA to invite another party to participate in "mediation by voluntary submission". Upon receipt of such a request, the AAA will contact the other party or parties involved in the dispute and attempt to obtain a submission to mediation.

## M-3. Fixing of Locale (the city, county, state, territory and, if applicable, country of the mediation)

i. When the parties' agreement to mediate is silent with respect to locale and the parties are unable to agree upon a locale, the AAA shall have the authority to consider the parties' arguments and determine the locale.

ii. When the parties' agreement to mediate requires a specific locale, absent the parties' agreement to change it, the locale shall be that specified in the agreement to mediate.

iii. If the reference to a locale in the agreement to mediate is ambiguous, the AAA shall have the authority to consider the parties' arguments and determine the locale.

## M-4. Representation

Any party may participate without representation (pro-se), or by any representative of that party's choosing, or by counsel, unless such choice is prohibited by applicable law. A party intending to have representation shall notify the other party and the AAA of the name, telephone number and address, and email address if available of the representative.

## M-5. Appointment of the Mediator

Parties may search the online profiles of the AAA's Panel of Mediators at **www.adr.org/mediation** in an effort to agree on a mediator. If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

i. Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.

ii. If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable to that party. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.

iii. If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

## M-6. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the Model Standards of Conduct for Mediators in effect at the time a mediator is appointed to a case. Where there is a conflict between the Model Standards and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial manner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

## M-7. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-5.

## M-8. Duties and Responsibilities of the Mediator

i.  The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.

ii. The mediator is authorized to conduct separate or ex parte meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications may be conducted via telephone, in writing, via email, online, in person or otherwise.

iii.  The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.

iv.  The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.

v.  In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.

vi.  The mediator is not a legal representative of any party and has no fiduciary duty to any party.

vii.  The mediator shall set the date, time, and place for each session of the mediation conference. The parties shall respond to requests for conference dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established conference schedule. The AAA shall provide notice of the conference to the parties in advance of the conference date, when timing permits.

## M-9. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference.

Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

## M-10. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## M-11. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

i.  Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;

ii.  Admissions made by a party or other participant in the course of the mediation proceedings;

iii.  Proposals made or views expressed by the mediator; or

iv.  The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## M-12. No Stenographic Record

There shall be no stenographic record of the mediation process.

## M-13. Termination of Mediation

The mediation shall be terminated:

i.  By the execution of a settlement agreement by the parties; or

ii.  By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or

iii.  By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or

iv.  When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

## M-14. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures. Parties to a mediation under these procedures may not call the mediator, the AAA or AAA employees as a witness in litigation or any other proceeding relating to the mediation. The mediator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

## M-15. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

## M-16. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

## M-17. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne equally by the parties unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

## M-18. Cost of the Mediation

There is no filing fee to initiate a mediation or a fee to request the AAA to invite parties to mediate.

The cost of mediation is based on the hourly or daily mediation rate published on the mediator's AAA profile. This rate covers both mediator compensation and an allocated portion for the AAA's services. There is a four-hour or one half-day minimum charge for a mediation conference. Expenses referenced in Section M-17 may also apply.

If a matter submitted for mediation is withdrawn or cancelled or results in a settlement after the request to initiate mediation is filed but prior to the mediation conference the cost is $200 plus any mediator time and charges incurred. These costs shall be borne by the initiating party unless the parties agree otherwise.

If you have questions about mediation costs or services visit **www.adr.org/mediation** or contact your local AAA office.

*© 2013 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.*

## Regional Vice Presidents and Directors

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, West Virginia**
Kenneth Egger
Vice President
Phone: 215.731.2281
Email: EggerK@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, New York, Vermont**
Ann Lesser, Esq.
Vice President
Phone: 212.484.4084
Email: LesserA@adr.org

**States: Alabama, Arkansas, Florida, Georgia, Mississippi, North Carolina, South Carolina, Virginia**
Charles Dorsey
Director
Phone: 866.686.6024
Email: DorseyC@adr.org

**States: Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Tennessee, Wisconsin**
Jan Holdinski
Vice President
Phone: 248.352.5509
Email: HoldinskiJ@adr.org

**States: Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington, Wyoming**
John English
Vice President
Phone: 619.239.3051
Email: EnglishJ@adr.org

**States: Rhode Island**
Heather Santo
Director
Phone: 866.293.4053
Email: SantoH@adr.org

**States: Louisiana, New Mexico, Oklahoma, Texas**
Molly Bargenquest
Vice President
Phone: 972.702.8222
Email: BargenquestM@adr.org

## Case Management Vice Presidents and Directors

Molly Bargenquest
Vice President
Phone: 972.702.8222
Email: BargenquestM@adr.org
**Administers cases in AR, IL, IA, KS, LA, MN, MS, MO, NE, ND, OK, SD, TX, WI**

Patrick Tatum
Director
Phone: 559.490.1905
Email: TatumP@adr.org
**Administers cases in AK, AZ, CA, CO, HI, ID, MT, NV, NM, OR, UT, WA, WY**

Charles Dorsey
Director
Phone: 866.686.6024
Email: DorseyC@adr.org
**Administers cases in FL, GA**

Heather Santo
Director
Phone: 866.293.4053
Email: SantoH@adr.org
**Administers cases in AL, CT, DC, DE, IN, KY, MA, MD, ME, MI, NC, NH, NJ, NY, OH, PA, RI, SC, TN, VA, VT, WV**



AMERICAN ARBITRATION ASSOCIATION®

800.778.7879 | websitemail@adr.org | adr.org

# EXHIBIT F

Vernon's Texas Statutes and Codes Annotated
    Civil Practice and Remedies Code (Refs & Annos)
        Title 7. Alternate Methods of Dispute Resolution (Refs & Annos)
            Chapter 171. General Arbitration (Refs & Annos)
                Subchapter A. General Provisions (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 171.001

§ 171.001. Arbitration Agreements Valid

Currentness

(a) A written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that:

(1) exists at the time of the agreement; or

(2) arises between the parties after the date of the agreement.

(b) A party may revoke the agreement only on a ground that exists at law or in equity for the revocation of a contract.

**Credits**
Amended by Acts 1997, 75th Leg., ch. 165, § 5.01, eff. Sept. 1, 1997.

Notes of Decisions (636)

V. T. C. A., Civil Practice & Remedies Code § 171.001, TX CIV PRAC & REM § 171.001
Current through the end of the 2013 Third Called Session of the 83rd Legislature

End of Document

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 7. Alternate Methods of Dispute Resolution (Refs & Annos)
      Chapter 171. General Arbitration (Refs & Annos)
        Subchapter B. Proceedings to Compel or Stay Arbitrations (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 171.021

§ 171.021. Proceeding to Compel Arbitration

Currentness

(a) A court shall order the parties to arbitrate on application of a party showing:

  (1) an agreement to arbitrate; and

  (2) the opposing party's refusal to arbitrate.

(b) If a party opposing an application made under Subsection (a) denies the existence of the agreement, the court shall summarily determine that issue. The court shall order the arbitration if it finds for the party that made the application. If the court does not find for that party, the court shall deny the application.

(c) An order compelling arbitration must include a stay of any proceeding subject to Section 171.025.

**Credits**
Added by Acts 1997, 75th Leg., ch. 165, § 5.01, eff. Sept. 1, 1997.

Notes of Decisions (138)

V. T. C. A., Civil Practice & Remedies Code § 171.021, TX CIV PRAC & REM § 171.021
Current through the end of the 2013 Third Called Session of the 83rd Legislature

    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 7. Alternate Methods of Dispute Resolution (Refs & Annos)
      Chapter 171. General Arbitration (Refs & Annos)
        Subchapter B. Proceedings to Compel or Stay Arbitrations (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 171.025

§ 171.025. Stay of Related Proceeding

Currentness

(a) The court shall stay a proceeding that involves an issue subject to arbitration if an order for arbitration or an application for that order is made under this subchapter.

(b) The stay applies only to the issue subject to arbitration if that issue is severable from the remainder of the proceeding.

**Credits**
Added by Acts 1997, 75th Leg., ch. 165, § 5.01, eff. Sept. 1, 1997.

Notes of Decisions (5)

V. T. C. A., Civil Practice & Remedies Code § 171.025, TX CIV PRAC & REM § 171.025
Current through the end of the 2013 Third Called Session of the 83rd Legislature

End of Document          © 2014 Thomson Reuters. No claim to original U.S. Government Works.